TOMKIES ET AL. *vs.* REYNOLDS.

1. If an executor or administrator lends the money or choses in action of the estate, without authority to do so, it is a conversion for which he becomes personally liable, and he may in such case sue on the contract in his own name, notwithstanding he has resigned or been removed from the administration, unless it be shown that he has in some way been discharged from the liability thus incurred.

2. If a plea professes to answer the whole or all the counts of the declaration and answers only a part, it is bad on demurrer.

3. To make the declarations of a party evidence in his favor, as a part of the *res gestæ*, they must be connected with the material fact or inquiry involved in the issue.

Error to the Circuit Court of Talladega.   Tried before the Hon. Thomas A. Walker.

THIS was an action of assumpsit brought by Walker Reynolds against James A. Hogan & Co.   The declaration contains five counts, the first is *indebitatus assumpsit* for money had and received, for money lent, &c.   The second, third, fourth and fifth counts are special and are founded on a written instrument, dated March 12th, 1838, and in the following language: "Received of Walker Reynolds, as one of the executors of William Wilson, deceased, two notes of hand on William Graham and John McNeel, amounting to seventeen hundred and fifty dollars, due the first day of January 1838, which we are to collect, or return the same to said Reynolds, with interest from the time they were due."   Judgment by default was rendered against Hogan.   Hardy and Tomkies, two of the firm of James A. Hogan & Co., interposed sixteen pleas: the first is non-assumpsit, and the second, third and fourth pleas deny that the instrument was executed by them or by their authority.   To all the other pleas the plaintiff demurred, and his demurrer was sustained.   The cause was submitted to the jury on issues joined on the first, second, third and fourth pleas, and a verdict was rendered for the plaintiff.   In the progress of the trial a bill of exceptions was signed by the presiding judge, which presents the following facts: The plaintiff gave in evidence articles of copartnership between the defendants, executed in

May 1837, which recite that the partnership was to be considered as formed on the first of April 1836, and to continue five years from that time. Hogan put into the firm as so much capital, $2010 25-100 in goods, together with certain real estate—Tomkies put in five thousand dollars—$2010 25-100 consisting of goods, which previously belonged to one Carr, and the residue in money—and Hardy put in five thousand dollars in money. The business was to be conducted by Hogan in the name of James A. Hogan & Co., but the firm could be dissolved and the business controled' by a majority of the partners. The plaintiff also proved that James A. Hogan executed the instrument declared on in the name of the firm; and that the notes of Graham and McNeel, described in it, were perfectly good and had been paid. Leeper, a witness for the plaintiff, testified that the notes mentioned in the receipt had been in his possession for the purpose of collecting the money due on them; that he had collected fourteen hundred dollars, and under the direction of Hogan had applied about seven hundred dollars to the payment of debts due by the firm of James A. Hogan & Co. During the examination of the witness the defendant asked him from whom he had obtained the possession of the notes; the witness replied that Hardy handed them to him at Wetumpka. The defendants, Hardy and Tomkies, then offered to prove by this same witness that at the time Hardy handed the notes to him for collection, he stated to him that he was acting at the request of Hogan and as his agent; to this the plaintiff objected and the objection was sustained by the court. The defendants also offered to prove that Hardy said at the time of handing the notes to Leeper, that he had no interest in them; the plaintiff objected to this testimony also and his objection was sustained, and the court refused to allow the declarations of Hardy, explanatory of his possession, made at the time he delivered the notes to Leeper, to go as evidence to the jury. It also appeared that the firm of James A. Hogan & Co. was dissolved in February 1839, and a trustee appointed to take charge of the assets and pay the debts. The defendants then offered to read to the jury as evidence the records of the Orphans' Court of Talladega, showing the will of William Wilson, deceased, the grant of letters testamentary to Walker Reynolds, William S. Miller and Martha Wilson, the widow of the testator, who were

appointed executors and executrix thereof—also the final settlement of the accounts of Walker Reynolds, as one of the executors, and his resignation as such. In this final settlement it appears that Walker Reynolds was charged with the amount of the receipt of James A. Hogan & Co. as so much cash belonging to the estate. To this evidence the plaintiff objected on the ground that it was irrelevant; his objection was sustained and the record excluded, to which defendant excepted.

The court charged the jury,

1. That if they believed that the notes mentioned in the receipt sued on were borrowed from the plaintiff for the purpose of raising money for the benefit of the firm, and the money was received by Hogan, one of the firm, that the plaintiff had the the right to recover whether the money was applied to the benefit of the firm or not.

2. That if one partner obtains money without the authority of his co-partners and applies it to the use of the firm, that the firm is liable the instant that the appropriation is made, although the firm would not be in the absence of any such appropriation, because of a defect of authority.

3. The receipt being signed by the firm and the question being whether all the members were bound by it or only the one signing it, they should give it that construction which will operate most strongly against all the parties purporting to be bound by it, and if they believed from the evidence that Hogan borrowed the notes mentioned in the instrument sued on for the purpose of raising money for the benefit of the firm, and did actually receive the money on the notes, then they should find for the plaintiff.

4. That *prima facie* the receipt itself shows enough to authorise the plaintiff to recover, if the jury were satisfied from the evidence that the defendants collected the money due on the notes called for in the receipt on Graham and McNeel.

To these charges the defendant excepted—and then requested the court to give the following instructions:

1. That the articles of partnership read in evidence did not constitute an ordinary mercantile partnership.

2. That if the plaintiff had notice of the provisions of the articles of co-partnership, and with such knowledge without the knowledge or consent of Hardy and Tomkies obtained from

Hogan the receipt read in evidence, and said receipt has never been approved or ratified by Hardy or by Tomkies, then the receipt is not binding on the firm of James A. Hogan & Co.

The third, fourth, fifth and sixth instructions are substantially the same and amount to this—That if the notes mentioned in the receipt were at the time of its execution the assets and property of the estate of William Wilson, deceased, and if the money due on the notes was collected under the direction of James A. Hogan, and if there was no proof of an express promise by Hardy or by Tomkies to pay the plaintiff the money collected on said notes, then the plaintiff being one of the several executors of William Wilson, deceased, could not recover. The court refused to give these instructions and the plaintiff excepted.

Rice and White, for plaintiffs in error:

1. In this state all valid contracts with executors are assets of the estate.—Harbin v. Levi, 6 Ala. Rep. 403. But the contract here relied on is void, because it is a *private* sale of assets. Fambro v. Gantt, 12 Ala. R. 298.

2. The rights and duties of an executor, under the English law, are very different from what they are in this state. There, when he disposed of the assets for money or on a credit, the money or notes were absolutely his own. Here, however, so long as they continue in a condition to be traced, they will pass as assets to any subsequent administrator.—6 Ala. R. 403; Wier v. Davis, 4 Ala. R. 442; 7 Ala. 254; 2 St. & Por. 441; Stevens v. Goodell, 3 Metc. R. 34; Fambro v. Gantt, 12 Ala. 298; ib. 105; 16 Ala. 652; ib. 286; ib. 817.

3. Although it may be true, under the English or Common Law, that where a contract is made with a *sole executor*, he is not compelled to sue *as executor* for its breach; yet in this state, where there is a *"joint executorship"* constituted, and W. R., one of the executors, delivers to a third person two notes which are assets of the estate, and takes from such third person a writing acknowledging the receipt of the notes from W. R. *" as one of the executors,"* &c. to be returned to the " said" W. R., unless collected—an action of assumpsit for the money collected on the notes by such third person cannot be maintained by *W.*

*R. in his individual name.* Such action can only be sustained in favor of *all the executors.*—Chandler v. Shehan, 7 Ala. R. 251; 2 Wms. Saund. 116, (2); Frankem v. Heirs of Trimble, 5 Penn. State Rep. 520; Jones v. Loftin, 2 Hawks' R. 199; Broom on Parties to Actions, 52 Law Lib. top pages, 27-37.

4. The receipt itself may contain a promise to *collect* and a promise to *return the notes if not collected,* but it does not contain an *express promise* to *pay* the amount collected on the notes or any sum of money whatever, to W. R. And as these notes were assets, and he only one of several executors, nothing short of an *express promise to pay W. R., in totidem verbis,* can enable *him* in his individual character, to maintain assumpsit for the money collected on the notes.—Nabors v. Shippey, 15 Ala. R. 293; Sydnor v. Bank at Montgomery, 7 Ala. R. 308; Hill v. Tucker, 1 Taunt. 7.

5. The law will not raise an *implied promise,* except in favor of the *legal owner* of the money. It is only in favor of the *legal title* that the law raises a promise to pay.—Sydnor v. Bank, 7 Ala. R. 308; Westmoreland v. Davis, 1 Ala. R. 299; 2 Gill & Johns. 326.

6. An executor cannot maintain an action even on a promissory note payable to himself, after he ceases to be executor. *A fortiori,* W. R. ought not to be allowed to prosecute to a successful termination a suit for that which is manifestly assets of Wilson's estate, after he has ceased to be executor by *voluntary resignation,* and after an admission in his return to the Orphans' Court (made since this suit was commenced) that the very claim for which he seeks a recovery is assets of the estate, and after he has by said Orphans' Court been discharged as executor without being held accountable for this claim as cash.—Hearin, adm. of Starke, v. Savage, adm., opinion delivered 13th June, 1849, by Judge Collier.

7. It is too clear for argument, that if any person has money which belongs to an estate and there be three executors of that estate, a payment of that money to either one of the executors will be a valid payment, because either executor has the legal right to receive it. This *legal right* is utterly inconsistent with the supposed right of any *one* of the three, in his *individual name,* to recover the money in assumpsit. If such a recovery were allowed, *after the resignation* of the one who brought such

suit, it is equally clear that such recovery would not bar another recovery at the suit of the representatives of the estate.

TAUL and GEO. W. STONE, for defendant.

DARGAN, C. J.—The question arising upon the state of the pleadings presents itself first for our consideration. The first count of the declaration is assumpsit for money lent, money had and received, &c. The second states in substance that the plaintiff as one of the executors of William Wilson, loaned to the defendants two notes on William Graham and John McNeel, amounting to seventeen hundred and fifty dollars, which they promised to collect of the makers, and if collected they would in a reasonable time pay the amount of said notes to the plaintiff with interest, and if they were not collected they would return them to him. The third alleges that the defendants made and delivered to the plaintiff their agreement in writing, and thereby agreed and contracted that they had received of the plaintiff as one of the executors of William Wilson, deceased, two notes on William Graham and John McNeel, amounting to seventeen hundred and fifty dollars, which the defendants were to collect of the makers or return the same to the plaintiff with interest.

The fourth count avers that the defendants were partners and it became necessary for them to borrow money, and the plaintiff as one of the executors of William Wilson, deceased, held two notes on William Graham and John McNeel, amounting to seventeen hundred and fifty dollars, and in order to procure the loan and use of the money specified in said notes the defendants proposed to the plaintiff that if he would give them the possession and use of said notes that they would undertake to collect them of the makers, and if they collected the money they would pay the amount thereof to the plaintiff with interest, on the first day of January 1839, or if they failed to collect said notes of the makers they would return them to the plaintiff. The fifth count is substantially the same as the third, and they all aver the collection of the money by the defendants of the makers.

The defendants, Hardy and Tomkies, filed sixteen pleas to this declaration. The plaintiff took issue on the four first pleas and demurred to all the others. The court sustained the demurrer. The question therefore is, whether any of the pleas

demurred to are sufficient to bar the action. None of the pleas deny that the plaintiff, as one of the executors of William Wilson, loaned the notes to the defendants, but they aver that the notes described in the receipt were of the goods and chattels of the estate of William Wilson, and that there were other executors. Some of them contain the additional averment, that the receipt was returned by the plaintiff to the Orphans' Court as a portion of the estate of the testator, and that he has since resigned his trust as executor.

1. The rule of law undoubtedly is, that when a contract is made with an executor or administrator in reference to the goods of the deceased, he may sue in his own name for a breach of it, and is not compelled to sue in his representative character.— Chitty Pl. 20; Harbin v. Levi, 6 Ala. 399; 6 East. 405. This principle of the common law is not denied by the plaintiff, but it is contended that if a contract be made with an executor or administrator in this state, in relation to the goods of the deceased, and the money due thereon belongs to the estate or is assets in the hands of the executor, he cannot sue on this contract and recover the money after he has been removed from office, or after he has resigned, whereby his power and authority over the goods of the deceased is determined. To sustain this position the plaintiff relies on the cases of Harbin v. Levi, 6 Ala. 399, and Dunham v. Gantt, 12 Ala. 105. In the case of Harbin v. Levi, this court held that if an administrator has sold the property of his intestate but has not received the price, and he is removed from office, he cannot sue the purchaser afterwards—that the right of action is gone with the administration and passes to his successor. The case of Dunham v. Gantt affirms the same principle. We do not propose to controvert the correctness of these decisions, but in my opinion they cannot be extended to every case so as to prevent an executor or administrator who has resigned or been removed from office, from sueing on a contract made with him in his representative character. For instance, if an executor or administrator make a contract in reference to the assets of the estate, which would amount to a *devastavit* and render him individually liable to the estate for the amount of money due on the contract, those interested may hold him responsible and may decline to pursue the party who contracted with the executor. Should he be denied the

right to sue the party who contracted with him, because he has been removed from office, when he is individually liable to the estate for the debt that the defendant promised to pay him? If the right to sue after his removal from office is taken from him in such a case, he and his securities may be charged with the debt, although he has not the legal right to compel the party who was benefitted by the contract to pay the money he promised. The law, in my opinion, will not and ought not to permit such a condition of things, but it should recognise principles more in unison with justice. This could be done by permitting the executor to recover, notwithstanding his removal from office, upon all contracts made by him, which would amount in law to a *devastavit,* unless those representing the estate would interpose in a proper manner to arrest the payment to the removed executor and claim the contract as a portion of the estate. If they did this and obtained the money from the debtor, then the executor would be discharged from liability for the waste—the defendant would pay the debt he promised to pay, and the estate would have its own. But to arm the defendant with the legal right to resist the payment of money on a contract entered into with an executor, because of his removal from office, when by the contract as alleged the executor is guilty of a *devastavit* and liable to be charged by the estate with the amount, might in many cases operate as a discharge of the defendant, although the executor might be compelled to account for the money. It did not appear from the evidence nor from the pleadings in the cases of Harbin and Levi, and Dunham and Gantt, that the administrator had been guilty of a *devastavit* in making the contract, but the proof showed that the contract was made in the sale of the personal property of the deceased in the manner prescribed by law. It is the duty of an administrator to sell the personal estate under the circumstances and in the mode pointed out by our statutes. In so doing he is not guilty of waste, and the notes received by him, though taken in his own name, are assets of the estate and may pass upon his removal or resignation of office to his successor; and if he be in no manner liable for the amount of the notes, by virtue of the contract by which he received them, no injury will result from denying to him the right to sue on them after his authority as administrator has ceased. But if an executor or administrator make a contract

Tomkies et al. v. Reynolds.

which he is not by law authorised or permitted to make, he is guilty of a *devastavit*, and the contract may be considered as a conversion of the assets to his own use. On such a contract he ought to be permitted to sue in his own name after his removal from office. Tested by this principle the pleas were bad, for the declaration shows that the plaintiff as one of the executors of William Wilson, deceased, loaned the notes to the defendant as money. Now it is very clear that if an administrator loan out the money of the estate without authority to do so, it is a conversion of it to his own use, and he may be charged with it as for a *devastavit*.—2 W'ms' Ex'rs, 1258; Waite v. Wharwood, 2 Atkyns, 159; State v. Johnson, 7 Blackf. 529; 1 Vernon, 197; 2 Vernon, 548. Whether the pleas would have been good had they gone further and avered that the plaintiff as executor had authority to lend out the money of the estate, or that the plaintiff had been discharged from all liability on account of the contract, and that the co-executors had accepted the promise of the defendants as assets, it is unnecessary to determine. But a declaration showing a contract by an executor, which will render him liable to the estate for a conversion of the assets, in reference to which the contract was made, is not answered by a plea that shows merely that the consideration of the promise of the defendants was assets of the estate, and that the plaintiff had resigned his office as executor.

2. This view renders it unnecessary to examine each plea separately, or whether any of them could be considered a good bar to any one of the counts, for they are all pleaded in bar of the whole declaration, and the rule of pleading is that the plea must be an answer to all it professes to answer, and if bad in part, it cannot be sustained when demurred to.—1 Chitty Pl. 554. So if a plea professes to answer several counts in a declaration, and it be insufficient to bar some, a demurrer to it must be sustained.—Clark v. Schaing, 1 Dana, 33; ib. 958; Gates v. Lanisbury, 20 John. 427.

3. On the trial the plaintiff read in evidence a written contract as follows: "Received of Walker Reynolds, as one of the executors of William Wilson, deceased, two notes of hand on William Graham and John McNeel, amounting to seventeen hundred and fifty dollars, due the first of January 1838, which we are to collect, or return the same to the said Reynolds, with

interest from the time they were due,"—which was signed in the name of the firm by James A. Hogan, one of the partners, and bore date the 12th day of March 1838. The plaintiff also proved the collection of the notes and the appropriation of about seven hundred dollars of the money to the payment of the debts of the firm. He also introduced one Leeper, whose testimony tended to show that the true nature of the contract between the parties was that the defendants borrowed the notes as money, if they could be collected of the makers, but if not collected, the notes were to be returned. The defendants cross-examined the witness, and proved on the cross-examination that he received the notes for collection of Hardy, one of the defendants. He then proposed to give in evidence the declarations of Hardy, made at the time he handed the notes to the witness, which tended to show that he had no interest in the notes, and that he merely acted as the agent of Hogan, his co-partner, in handing them to him for collection. To these declarations the plaintiff objected, and his objection was sustained. When this cause was before this court at a previous term, it was decided that the contract might be explained by parol proof to show its real character—whether it was intended to be a loan of money in the event it was collected from the makers, or whether it was intended that the defendants were to collect the money of the makers as the agents of the plaintiff. If the latter was the contract, then the firm was not bound, because the contract was not within the scope of the partnership authority. The declarations of Hardy were intended to show that the firm did not consider it a loan of money, but as an undertaking on the part of Hogan to collect the money for the plaintiff. The general rule is, that the declarations or admissions of a party in possession are admissible as a part of the *res gestæ* to show the character of his possession. But to make such declarations evidence, they must be connected with the principal fact under investigation. If the fact with which they are connected is not the material inquiry, or if the party is not sought to be charged because of the existence of the fact with which they are connected, they cannot be admitted as evidence. On this subject the best writers say that to make the declarations of a party evidence in his favor, they must be connected with the material fact or inquiry under investigation.—1 Greenl. Ev. §§ 109, 158 ; 1 Phillips' Ev. 231.—

By this rule we think the declarations of Hardy were properly excluded. The material fact was not whether he had actually had the possession of the notes·or whether he handed them to the witness, but whether the contract was binding on the firm. The plaintiff did not seek to show that the contract was binding on the firm because Hardy had had possession of the notes, or because he handed them to the witness for collection, but this proof was introduced by the defendant Hardy himself, and to permit him to introduce his own declarations in connection with a fact uot relied on by the plaintiff to fix his liability, nor connected with the material fact involved, would be to enable a defendant to make his own declarations evidence in his favor, when the fact with which they are connected is not brought out by the plaintiff, nor the ground on which he is sought to be charged.

This disposes of the case; for it is clear that the transcript from the Orphans' Court, showing the resignation of the plaintiff as executor since the suit was brought, could not be received as evidence under any of the pleas on which issue was joined, and the instructions of the court were in strict conformity with the decision heretofore made in this cause. The judgment must consequently be affirmed.

CHILTON, J., not sitting.