# Chambers *v.* Falkner.

*Bill in Equity for Foreclosure of Mortgage, Account, and Marshalling Securities.*

1. *Parol evidence; when admissible in explanation of writing.*—When a mortgagee is described as the president of a corporation, both in the mortgage and in the secured note, and it is doubtful from the face of the papers whether they were intended for his benefit in his individual capacity, or in his official character as the representative of the corporation, parol evidence is admissible,

[Chambers v. Falkner.]

in equity, to remove the uncertainty, and to show that they were intended for the benefit and security of the corporation.

2. *Contracts with corporations.*—When a corporation has no power to lend money, a promissory note given to it for borrowed money, and a mortgage to secure the note, are both void, and can not be enforced in equity.

3. *State Grange of Patrons of Husbandry; power to lend money.*—The private corporation chartered by the name of the "State Grange of the Patrons of Husbandry of Alabama," has no express grant of power to lend money, and no such power can be implied from the declared purposes and objects for which its charter was granted : on the contrary, such power is excluded by the declaration that the corporation is not created for pecuniary profit.

4. *Contracts ultra vires; estoppel.*—When a person has made a contract with a corporation which is *ultra vires,* and has received the benefit of it, neither he nor those claiming under him are estopped from setting up the invalidity of the contract in defense of a suit to enforce it.

5. *Negotiable paper; rights of holder; burden of proof.*—When a valid defense is shown to exist as between the original parties to negotiable paper, and the holder claims protection against it, the *onus* is on him to show that he acquired the paper in good faith, for valuable consideration, without notice of such defect, and before maturity : if he acquired it after maturity, he is put on inquiry, and is chargeable with notice.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 17th August, 1878, by the Campbell Printing Press and Manufacturing Company, a corporation chartered under the laws of New York, against J. M. Falkner, W. L. Chambers, the several persons composing the firm of Moses Brothers, a partnership doing business in the city of Montgomery, and Robert H. Molton, as the administrator of the estate of Kate A. Glover, deceased ; and sought the foreclosure of a mortgage, which said Falkner had executed to the complainant, an account, and the marshalling of securities as between the complainant, said Chambers, and Moses Brothers. The complainant's mortgage, which was made an exhibit to the bill, was dated the 1st day of May, 1877 ; was given to secure the payment of said Falkner's note for $1,697.52, of even date with the mortgage, and payable six months after date, to the complainant's order, at the First National Bank of Montgomery ; and conveyed property which was described as "the *Southern Plantation* printing establishment, situated at Nos. 5 and 7 Perry Street, Montgomery, Alabama, including printing presses, type, cases, stands, and all the material thereto belonging." The consideration of this note, according to the averments of the bill, was a printing-press which the complainant had sold, on the 12th May, 1875, to said Falkner and others, then doing business in Montgomery under the firm name of J. Falkner & Co., retaining the title until the purchase-money should be paid ; and said J. M. Falkner having bought out the interest of his co-partners, on or about the 1st January, 1876, and assumed all the debts of the

partnership, the debt to the complainant being still unpaid, by a new contract between him and the complainant, as the bill alleged, the complainant surrendered to him the title to the printing-press, and took the note and mortgage as security for the debt. The bill alleged that said Molton, as administrator, Chambers, and Moses Brothers, each claimed some interest in the property conveyed by the mortgage, or some lien upon it; that said Chambers and Moses Brothers had each taken possession of portions of the property; that their respective liens were subsequent and subordinate to the complainant's mortgage, of which they had notice; or, if not subordinate and inferior, that each embraced other property in addition to that conveyed by the complainant's mortgage, to which they should first resort, and for which they should be required to account. The bill therefore prayed that the complainant's mortgage be declared a first lien on the property, and be foreclosed; that Chambers and Moses Brothers each be required to account for the property which they had taken; that an account be taken of the mortgage debt; that the priority of the respective liens be declared, if the complainant's was not first, and the securities marshalled; and for general relief.

No controversy arose in reference to Molton's lien, and it requires no notice. Chambers and Moses Brothers each filed a cross-bill, in the nature of an original bill, asserting the priority of their respective mortgages. The first mortgage of Moses Brothers, a copy of which was made an exhibit to their bill, was executed to them by said J. M. Falkner, to secure the payment of $875 borrowed money, for which he had given them his note, of even date with the mortgage; was dated the 14th September, 1876; and conveyed a city lot in Montgomery, together with "all the property, of every kind and description, in the *Southern Plantation* office, on Perry street in the city of Montgomery." The mortgage held by Chambers, a copy of which was made an exhibit to the bill of Moses Brothers, was executed by Jefferson Falkner and J. M. Falkner; was dated the 1st January, 1876; recited an indebtedness on the part of the grantors to "W. H. Chambers, master of Alabama State Grange," for the sum of $1,763.10, as evidenced by their promissory note, of even date with said mortgage, "payable to the order of W H. Chambers, master as aforesaid," on the 1st day of January, 1877; conveyed "to said W. H. Chambers, master as aforesaid," two city lots in Montgomery, together with the type, furniture and materials of the *Southern Plantation* printing-office, and the subscription list of the newspaper of that name "to have and to hold

[Chambers v. Falkner.]

to the said W. H. Chambers, master as aforesaid, and his successors forever"; and contained a power of sale "to the said W. H. Chambers, master as aforesaid, or any one duly authorized by him," if default should be made in the payment of the secured note. This mortgage was filed for record on the 10th May, 1876. The bill of Moses Brothers alleged that the note secured by it was given for money loaned to said J. & J. M. Falkner by a corporation organized under the laws of Alabama by the name of *State Grange of the Patrons of Husbandry of Alabama*, otherwise known and called *Alabama State Grange*; that the note and mortgage were given and intended for the use, benefit and account of said corporation, and were null and void, because said corporation had no power to lend money; and therefore they insisted that said mortgage was inoperative as to them, and that W. L. Chambers was accountable to them for the value of the mortgaged property which he had sold, and for the rents of the real estate which he had received. Chambers, in his answer and cross-bill, claimed to be the owner of said mortgage and secured note, "by assignment and transfer from said W. H. Chambers"; admitted that the note and mortgage were executed as shown on their face, and that the consideration of the note was borrowed money; but he denied that the money was borrowed "from the *Alabama State Grange*, or any other corporation," and alleged that, "on the contrary, said money belonged to said W. H. Chambers"; and he insisted that Moses Brothers, "even if said securities were taken by said alleged corporation in the name of said W. H. Chambers, can not take advantage thereof to defeat said security"; and he claimed to be entitled to protection as a *bona fide* holder for valuable consideration without notice.

On final hearing, on pleadings and proof, the chancellor held, that the mortgage to Chambers, "considering the instrument itself, and in connection with the testimony," conveyed the title to Chambers as trustee for the use and benefit of the corporation, and should be regarded as a contract with the corporation, and was null and void, because the corporation had no power to lend money; that W. L. Chambers, as assignee, was chargeable with constructive notice from the face of the papers, even if he had no actual notice, and therefore could not claim to be a *bona fide* purchaser; and that either Moses Brothers or Falkner might take advantage of the invalidity of the contract. He therefore dismissed the cross-bill of Chambers, and granted relief to Moses Brothers, ordering an account, &c. From this decree Chambers appeals, and here assigns it as error.

GUNTER & BLAKEY, for appellant.—The note and mortgage show, on their face, that they are the personal contract of W. H. Chambers, and that the legal title to the property was conveyed to him personally, the superadded words being mere *descriptio personæ.*—*Agee v. Williams*, 27 Ala. 644; *Freeman v. McCann*, 37 Ala. 714; *Crimm v. Crawford*, 29 Ala. 623; *Westmoreland v. Foster*, 60 Ala. 449. The mortgagors are concluded and estopped from saying that they are not indebted to W. H. Chambers.—*Hill v. Huckabee*, 52 Ala. 155; *Riddle v. Hill*, 51 Ala. 224; *Erwin & Jones v. Hill*, 51 Ala. 580; *Haynie v. Miller*, 61 Ala. 62; *Grigsby v. Nance*, 3 Ala. 347; *Bryan v. Wilson*, 27 Ala. 214; cases cited in United States Digest, 1st Series, vol. 5, page 466, § 1083; *Ib.* 640, § 611; 1 Chitty on Contracts, 316, 11th Amer. ed. The mortgagors do not set up the plea of *ultra vires*, but impliedly admit the validity of the contract with Chambers; and it does not lie in the mouth of the subsequent mortgagees to set up that defense. If the money was borrowed from the corporation, and it be admitted that the corporation had no power to lend money; still, that question can only arise between the corporation and the officers who made the loan, and the parties who contracted with those officers, or those who have reaped the benefit of the contract, can not be heard to assail its validity. The corporation is not seeking to enforce an executory contract, which could not be enforced against it, because *ultra vires*; but has fully performed on its part, and the other party has had the full benefit of the consideration, "and common justice requires that the party be made to comply."—Green's Brice's *Ultra Vires*, 372, note; *National Bank v. Matthews*, 98 U. S. 621, and authorities there cited; *Silver Lake Bank v. North*, 4 John. Ch. 370; 63 N. Y. 69; Field on Corp. 295; Sedg. Stat. & Const. § 75; 7 Serg. & R. 313; 17 Barbour, 380; Ang. & Ames on Corp. § 153. It must be noted, too, that the contract is, in itself, innocent and lawful, and was entered into by both parties in good faith; and it does not stand on an equality with illegal contracts.—*Bissell v. Railroad Co.*, 22 N. Y. 258; *DeGraff v. Amer. Linen Co.*, 21 N. Y. 128. But, although the corporation may have had no power to engage in the business of lending money, the illegality of this single act would not necessarily follow. The money may have been lent, simply to keep it from lying idle and unprofitable, or for some purpose not alien to the primary business of the corporation,— as to aid in the establishment or circulation of a newspaper devoted to the interests of agriculture; and the person assailing the contract, on the ground of *ultra vires*, must clearly show its invalidity.—Green's Brice's *Ultra Vires*, 39–42;

[Chambers v. Falkner.]

54 Ala. 75. The corporation is not a party to the suit, and no objection was raised to the omission to bring it before the court; and it would present a strange anomaly, to refuse relief to the party who is before the court, as the present holder and owner of the note and mortgage, because the absent corporation may have some interest which, if present, it could not enforce. Again, the note was negotiable; and W. L. Chambers is entitled to protection as a *bona fide* purchaser for valuable consideration without notice.—*Butler v. Lexington*, 14 Wallace, 282; *Carpenter v. Longan*, 16 Wallace, 271; *Sawyer v. Prickett*, 19 Wallace, 146.

TROY & TOMPKINS, for Moses Brothers.—The note and mortgage, considered by themselves, show a contract with the corporation, or for its benefit, and not with W. H. Chambers individually.—*Means v. Swornstrett*, 32 Ind. 87; *Babcock v. Beman*, 1 Kernan, 200. If it was a matter of doubt or uncertainty, the fact is clearly established by the parol proof, which was admissible for that purpose.—1 Daniel's Neg. Instr. §§ 418–9; *Bryan v. Wilson*, 27 Ala. 208; *Dawson v. Cotten*, 26 Ala. 591. Under the articles of incorporation, the corporation had no power, express or implied, to lend money; and the note and mortgage are, for that reason, void. *Waddell v. Grand Lodge*, 36 Ala. 313; *Savings Bank v. Dunkin*, 54 Ala. 471. W. L. Chambers is chargeable with constructive, if not actual notice of these facts. He was one of the attesting witnesses to the mortgage, and drew it as attorney; and the unusual words employed in describing the grantee could not have been inserted without knowledge of the facts.

E. J. FITZPATRICK, for the complainant.

BRICKELL, C. J.—1. If it is not manifest from the note and mortgage, that each was executed to Chambers in an official capacity, and not individually, the parol evidence is full and clear that such is the fact. The consideration moved wholly from the corporation known as the *Alabama State Grange*, or by its corporate name, *State Grange of the Patrons of Husbandry of Alabama;* and that it was the intention the note and mortgage should be executed to Chambers as its president, and for its benefit, is fully proved. There was no objection to parol evidence of the facts, and, if there had been, it could not have been sustained.—*Douglass v. Br. Bank of Mobile*, 19 Ala. 659; *Caldwell v. Br. Bank of Mobile*, 11 Ala. 549; *Smith v. Br. Bank of Mobile*, 5 Ala. 26; *McWalker v. Br. Bank of Mobile*, 3 Ala. 153.

2-3. It has been too often decided in this court, to be matter of doubt or controversy, that the contracts of corporations, which they have no power to make, are void, and the courts can not enforce them. Promissory notes, or mortgages, given as security to the corporation, are wanting in legal validity, and will not furnish a cause of action, in law or in equity.—*Smith v. Ala. Life Ins. & Trust Co.*, 4 Ala. 558; *Grand Lodge v. Waddell*, 36 Ala. 313. The consideration of the note the mortgage was intended to secure, was money of the corporation, loaned to the mortgagor, by its officers and agents, acting by its authority, as it must be presumed, and as the proof very clearly indicates. The express power to loan money is not conferred on the corporation; and any such implied or incidental power is foreign to, and excluded by the purposes and objects of its creation, as expressed in the article of incorporation, and by the express declaration in the article, that it was not formed for *pecuniary profit*. A corporation, not created for banking purposes, or to conduct some business usual in banking, whatever may be its character, though it may have the power, express or implied, of borrowing money, has not an implied power of loaning its funds.—1 Dan. Neg. Inst. § 384. It was so held by this court, in reference to a railroad corporation, in *Waddill v. Ala. & Tenn. Railroad Co.*, 35 Ala. 323; and in reference to the Grand Lodge of Masons, in *Grand Lodge of Ala. v. Waddill*, 36 Ala. 313. This case, it is admitted, is decisive of the case now before us, unless we are prepared to overrule it. If we had serious doubts of its correctness, we could not depart from it, at this day. But we are of opinion that it is well founded in principle, and is supported by the weight of authority.

4. We do not regard it as within our province, to inquire whether the parties now in interest, who are creditors seeking the enforcement of liens for the security of meritorious debts, ought to interpose the want of capacity in the corporation to make the loan, to defeat the priority claimed for the mortgage given to secure it. The court can not indulge in favor or disfavor to either party, and is simply without power to enforce contracts wanting in legal obligation and validity; and without power to impart capacity to corporations to enter into contracts foreign to the purposes of their creation. The powers which they may have, are derived from statutes, and it is not for the courts, by tolerating their usurpations, to defeat the will of the legislature. The corporation may, and did doubtless, part with the money in good faith; and there is no evidence of any want of good faith on the part of the mortgagors. Each, doubtless, when

[Chambers v. Falkner.]

the transaction was had, was under the belief of its legality and validity ; and it is their misfortune, rather than fault, that the mortgagor is without the ability to meet the demands of all his creditors, and thereby have avoided a race of diligence between them.

There are authorities which support the proposition, so vigorously pressed by appellant's counsel, that as the mortgagor has reaped all the benefits of the transaction—has obtained and used the money of the corporation—all who claim under him should be estopped from denying the corporate power to make the contract. The proposition is not new in this court. It was pressed upon the consideration of the court, in the leading case of *City Council of Montgomery v. Montgomery & Wetumpka Plank-Road Co.*, 31 Ala. 76–88. In answer, STONE, J. speaking for the court, said : "If this doctrine be established, these corporations, no matter how limited their powers, may make themselves omnipotent. They have only to induce persons to contract with them, beyond the scope of their powers, and their very usurpations have the effect of conferring powers on them which the legislature have withheld. A proposition so erroneous can scarcely need argument to overturn it." More recently, the proposition was again pressed, and the answer of Justice STONE was again : "A party dealing with a corporation, in a matter not within the purview of its delegated power, does not estop himself from setting up, in defense, the want of authority in the corporation to make the contract . . . . In such case, the doctrine of estoppel can not be held to apply, without clothing corporations with the ability to increase their powers indefinitely, by sheer usurpation. Such contracts on the part of a corporation are *ultra vires*, and void, and no right of action can spring out of them."—*Marion Savings Bank v. Dunkin*, 54 Ala. 471. These were not hasty, ill-considered opinions. They were the result of careful research and deliberation, and all but the latter case have stood unquestioned by the profession, for many years. Touching contracts, their validity and obligation, obedience to the maxim *stare decisis* compels a strict adherence to them.

5. The appellant can have no higher standing than would his assignor, or the corporation, if either were seeking a foreclosure of the mortgage, in a controversy with other mortgagees. What rights a *bona fide* holder could have acquired, it is not necessary to inquire. It is not shown that the appellant stands in that relation; on the contrary, the weight of the evidence, so far as it touches the point, is against him. When valid defenses are shown to exist against negotiable paper, if the holder would protect himself against

them, he is required to show that, in good faith, for a valuable consideration, without notice of its infirmities, he acquired the paper before maturity.—*Ross v. Drinkard*, 35 Ala. 434; *Mayor. v. Wetumpka*, 63 Ala. 632. When the appellant acquired the paper—whether before or after maturity—is not shown distinctly. The strong tendency of the testimony of Falkner is, that it must have been at some time after its maturity. It is not enough that the appellant gave a valuable consideration for the paper. He must have derived his title before its maturity; for, whenever negotiable paper is found outstanding after its maturity, whoever deals in it is put on inquiry; and if he makes none, he must be content to take it subject to all defenses which could be made against his transferror. The time of the acquisition of the paper, was a fact lying peculiarly within the knowledge. of the appellant—he had the means of showing it clearly. The burden of proof was upon him; and the maxim must be applied, that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted.

Whether the note and mortgage could not be enforced by the assignor of the appellant, or by the appellant as assignee, if it was shown that the assignor had without authority made the loan, and was bound to account for the money to the corporation, is not a question now presented.—*Tomkies v. Reynolds*, 17 Ala. 109; *Bryan v. Wilson*, 27 Ala. 208. The pleadings do not aver these facts, nor is there any evidence showing them. On the contrary, the evidence tends to show that the money was loaned by authority of those charged with the control and custody of the corporate funds; and that the president was the mere conduit through which it was transmitted to the mortgagor, and charged only with the duty of taking securities for its payment.

The decree of the chancellor must be affirmed. ·