# Barfield v. Evans.

## Damages for Automobile Accident.

(Decided May 14, 1914. Rehearing denied July 2, 1914.
65 South. 928.)

1. *Master and Servant; Injury by Servant; Liability; Pleading.*— A complaint alleging that defendant was operating an automobile when it ran upon plaintiff's intestate crushing him so that he died, and that his death was proximately caused by the negligence of the servant or agent of defendant while acting within the line and scope of his employment, states a cause of action as against a general demurrer.

2. *Same; Evidence.*—The evidence examined and held to sustain a finding that the agent of defendant was acting within the line and scope of his authority while operating the automobile which ran down and killed plaintiff's intestate.

3. *Same.*—The owner of an automobile operated by an agent is not liable for the negligence of the agent except when such agent was acting within the line and scope of his authority.

4. *Appeal and Error; Review; Presentation Below.*—Objection to the form of complaint cannot be raised for the first time on appeal.

5. *Witnesses; Impeachment; Evidence.*—Where defendant introduced a witness who testified that the automobile alleged to have run down the intestate did not belong to defendant, plaintiff, after laying a predicate therefor, may offer contradictory statements made by the witness for the purpose of impeachment; such evidence is admissible only for impeachment and it is proper for the court to instruct that it cannot be regarded for any other purpose.

6. *Trial; Reception of Evidence.*—Where evidence is admissible for a particular purpose, the court cannot be placed in error for receiving it by a mere general objection to its introduction.

7. *Evidence; Admissions Against Interest.*—Where no motive for misrepresentation appeared, statements in disparagement of proprietary interest are entitled to consideration against the declarant, and those in privity with him, and are also admissible against strangers when relevant to the facts in issue, and the declarant is dead or his sworn testimony cannot be had.

8. *Same; Hearsay; Declaration.*—Where defendant admitted having once owned the automobile, but claimed that she had sold it to one Jones who was operating it for hire through the agency of the driver selected by defendant, testimony by the driver as to declarations of Jones as to his ownership of the machine, made prior to the accident was properly rejected; such testimony not being admissible as part of the res gestæ of the possession, and it not appearing that Jones was in possession when he made the declaration.

9. *Charge of Court; Verbally Incorrect.*—The refusal of a charge which was verbally incorrect is not error, as trial courts are required to give charges or refuse them, in the language requested.

10. *Same.*—Where the matter in issue was whether the machine belonged to defendant, and the driver was her agent, and there was no question about his acting within the line and scope of his authority and where the trial court charged that there could be no recovery if the driver was not defendant's agent, the refusal of a charge asserting that the jury were the judges whether the driver was in defendant's employment, and acting within the scope of his employment, and if he was not, there could be no recovery, was not erroneous.

11. *Same; Conformity to Evidence.*—It is not error to refuse charges not based on the evidence.

(Mayfield and de Graffenried, J., dissent.)

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by J. S. Evans, as administrator, against Frances J. Barfield, for damages for the death of his intestate caused by an automobile accident. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 2 sufficiently appears from the opinion.

Count A is as follows: Plaintiff suing as administrator of the estate of E. L. Evans, deceased, claims of defendant the sum of $25,000 damages for that whereas, to wit, on October 26, 1912, defendant was running and operating an automobile upon the streets of Birmingham, Jefferson county, Ala., when the same ran against plaintiff's intestate, a pedestrian, who was crossing the street, to wit, Eighth avenue, at or near its intersection with Williams street, and plaintiff's intestate was thereby so greatly crushed, injured, bruised, and mangled that he died. And plaintiff avers that his said intestate's injuries and death were proximately caused by reason of, and as a direct consequence of, the wanton acts of defendant's servant or agent while acting within the line and scope of his authority.

The following charges were refused to defendant: (8) If you believe that the witness Klyche has taken a personal interest in this case, and that he is to be compensated in case plaintiff gets judgment, then that is a circumstance to which you may look in weighing his testimony. (9) If you believe that any one in this case has sworn falsely to any material fact in issue, then you may discredit his entire testimony. (10) You are sole judges from all the evidence in this case, and you are to judge from the evidence before you whether the chauffeur, Ralph Condray, was in defendant's employment and acting within the scope of his employment, as such servant or agent, and, if you believe from the evidence that he was not in her employment or her agent or servant, you cannot find for defendant. (11) If there is any individual juror who is reasonably satisfied that the chauffeur was not the agent or servant of defendant at the time of the accident, then you cannot find a verdict for plaintiff. (12) If you believe that the witness

[Barfield v. Evans.]

Charles Wheelen has taken a personal interest in this case, and that he is to be compensated in case plaintiff gets a judgment, then this is a circumstance to which you may look in weighing his testimony.

PROSCH & PROSCH and ALLEN & BELL, for appellant. The pleadings were subject to the demurrer interposed.—*T. C. I. Co. v. Smith*, 55 South. 170; *Bir. Belt v. Drake*, 56 South. 53; *B. R. L. & P. Co. v. Brown*, 43 South. 342; *Same v. Cochran*, 60 South. 304; *Vessel v. Seaboard*, 51 South. 180. It must appear that the accident occurred while the person in charge of the automobile was using it in the course of his employment in the master's business.—*Parker v. Wilson*, 60 South. 150; 60 Atl. 506; 107 N. W. 133; 103 N. Y. App. 577. Cross-examination of a witness cannot be extended for purposes of impeachment to the witness' statement about any immaterial or collateral matter.—*Parnell v. State*, 129 Ala. 6; *Ridgell v. State*, 156 Ala. 10. The party in possession of the property may make declarations. declaratory of his possession or ownership, and such declaration will not be within the rule against hearsay.—*Payne v. Crawford*, 102 Ala. 397; *Daffron v. Crump*, 69 Ala. 77. But they are not admissible except when declarant is an actual or constructive possessor of the property.—*Gillespie v. Burleson*, 28 Ala. 551; *Lavender v. Hall*, 60 Ala. 214. Charges must be applicable to the evidence and the issues.—*Empire L. I. Co. v. Gee*, 171 Ala. 440. If a charge is intelligible and states a correct proposition of law when construed as a whole, it should be given.—*Bir. So. v. Craig*, 55 South. 950; *A. G. S. v. Cox*, 55 South. 909.

GARBER & GARBER, for appellee. Where there is a material conflict in the evidence or where reasonable in-

[Barfield v. Evans.]

ferences may be drawn favorable to the right of recovery, the affirmative charge cannot be given.—*C. of Ga. v. Ashley,* 160 Ala. 580; *Hall v. Posey,* 79 Ala. 84. Instructions should be accurate, clear and easy of interpretation.—*McCary v. A. G. S.,* 62 South. 18; *Peterson's Case,* 74 Ala. 34. Charges must be based upon the evidence.—*Wilks v. State,* 61 South. 475. Verbal inaccuracies authorize the refusal of a charge.—*L. & N. v. Lile,* 154 Ala. 556. The complaint was not subject to general demurrer.—*Leach v. Bush,* 57 Ala. 145; *C. of Ga. v. Foshee,* 125 Ala. 199; *B. R. L. & P. Co. v. Weathers,* 164 Ala. 23; *Barbour v. Shebor,* 58 South. 276; *Adler v. Martin,* 59 South. 597. While a party may testify as to who owns property, he cannot state that a third party ever told him that he owned it.—*Cohen & Goldberg v. Robbins,* 159 Ala. 289.

SAYRE, J.—Great stress is laid in argument upon the action of the trial court in overruling demurrers to counts 2 and A.

Counts 2 alleges that: "Defendant was running and operating an automobile upon the streets of Birmingham * * * when the same ran upon and against plaintiff's intestate, a pedestrian, who was crossing Eighth avenue. * * * And plaintiff avers that his said intestate's injuries and death were proximately caused by reason of and as a direct consequence of the negligence of Ralph Condray, the defendant's servant or agent, while acting within the line and scope of his employment as such."

We think the only plausible objection taken in argument against this count may be thus formulated: While it shows that "defendant" was operating the car, and so that "defendant" owed a duty to plaintiff's intestate in his situation, it shows negligence on the part of

Condray only, of whom no duty in the permises is categorically predicated, because it is not unequivocally alleged that he was engaged in the manual operation of the car, and thus fails to show that the act complained of was a breach of duty on the part of the person who did it. While the count leaves it to be inferred that defendant was operating the car by her agent Condray, or that Condray was operating the car for defendant, and thus it appears that the averments of act and duty are not correlated with that technical accuracy and certainty which the rules of good pleading may require, still the count did not fail to state a cause of action, for the inference is reasonably clear, though not inevitable, that plaintiff was injured by the negligence of defendant's servant Condray in the manual operation of the car, so satisfactory altogether as to put upon defendant the burden of answering by demurrer in which the defect should have been "distinctly stated," as the statute requires (Code, § 5340), and the objection cannot be taken for the first time on appeal. The demurrer, if intended to reach this point, was too general in its language, and for this reason, if none other, was properly overruled.

Count A has been held good in *Barbour v. Shebor*, 177 Ala. 304, 58 South. 276. We do not see, however, that the decision in that case is conclusive of the question here raised by the argument made against count 2 and repeated as against count A, for the opinion there indicates that the court was answering only the argument that the complaint was too general in its averment of the immediate act of negligence charged. As for that question, *Barbour v. Shebor, supra*, and the cases there cited are in point and sustain the trial court's ruling on the demurrers to all the counts in this case.

As for the ground now urged in argument against counts 2 and A especially, and stated above in our discussion of the demurrer to count 2, we prefer to rest our ruling upon what is there said.

Numerous exceptions were reserved on the admission of evidence. Plaintiff's intestate had been swept away and almost instanly killed by an automobile just after he stepped from a street car. Condray was in charge of the automobile, was driving it at great speed, and there is no room for doubting that his reckless negligence was responsible for the disaster. The main, indeed the only question of dispute was whether Condray was acting at the time as the servant of defendant, and this depended entirely upon the question whether defendant was at the time engaged in the common carriage of passengers for hire and used the machine in that business. Appellant (defendant) was not in the automobile, nor was there any evidence going to show that she knew the machine was in use at the time or had any interest in its immediate use, unless she was engaged in the business of carrying passengers. She had owned the machine at one time, but she brought evidence tending to show that some time before the occasion in question she had disposed of it to one Jones, who operated a public line of automobiles or taxicabs for the common carriage of passengers, and that she had at the time no interest in, or control of, the machine. She also contended that, however that issue might be solved, the evidence did not warrant a verdict against her for that it failed to exclude the idea that the machine was at the time being operated by Condray upon some business of his own. Upon these theories she requested the general charge as to each of the counts and upon the case as a whole.

We find it convenient at this point to dispose of the question raised by the court's refusal of these charges. In this connection it must be noted that there was evidence tending to show that the machine had been in use and that Condray had been driving it, for the common carriage of passengers for hire about the city of Birmingham. The relation between the owner and the driver while the machine was being so used was governed by those general rules of law which obtain between master and servant, and the owner's liability, to strangers for the wrongful and negligent acts and omissions of the driver in operating the machine depended upon the propriety of a finding on the evidence that the driver at the time of the act or omission complained of was acting for defendant and within the scope of his employment.—*Parker v. Wilson*, 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87. Condray testified that he had three passengers in the car at the time. Both parties were content to let the question, whether he was acting for the owner or upon some business peculiarly his own, rest for decision upon this statement of the witness and the evidence going to show that he was ordinarily engaged in operating the automobile as a public vehicle for the common carriage of passengers for hire, that defendant owned the machine, controlled its use, and enjoyed the benefit of its earnings. From this evidence, there being nothing in the circumstances to indicate the driver's departure from the line of his employment, the jury might have found that the driver was at the time engaged in the business of the defendant.

Referring now to the rulings on evidence: Plaintiff's effort was to show that defendant through the agency of Jones was using the car in the public business of carrying passengers, that she (defendant) had turned the car

[Barfield v. Evans.]

over to him for that purpose, and we think it may be said that plaintiff's right to recover under the evidence depended upon a finding of these facts. As bearing upon the question whether defendant did so use the car for the common carriage of passengers, the ownership of the car was the most seriously contested single fact in the case. The ultimate issue, of course, was whether the driver in charge of the car at the moment of the accident was the agent or servant of defendant or of Jones. There was no inherent necessity in the nature of things that the mere ownership of the car should determine liability for its operation. Defendant might have let the car to Jones for use in his business, giving him the control of it, without becoming responsible for the manner of its operation by him or his servants. But that explanation of the relation between them was not offered. There being evidence from which the jury might have found that the car was at the time the property of defendant, that it was being operated for the common carriage of passengers for hire through the agency of Jones, that Jones had authority to employ a driver for the car, that she had sent Condray to Jones for employment, that she paid Condray for his services, and that Jones accounted to her for the earnings of the car, she answered the implications of this evidence by a denial of the facts and by other evidence going to show affirmatively that some months before the accident she had disposed of the car to Jones absolutely, that at the time she was not concerned in its operation, and that her accountings with Jones were not of the earnings but of payments on the purchase price of the car which, according to their concurring testimony, was to be paid for the most part in installments after delivery. Defendant's ownership was provable under the issues involved, and, in view of the conflicting tenden-

cies of the evidence, it must have received much consideration at the hands of the jury. On the question of ownership, Jones, corroborating defendant, testified that he had bought the automobile and was using it in his own business. Thereupon plaintiff, after laying predicates amply sufficient to put the witness upon fair notice of the proposed impeachment, offered testimony of contradictory statements made by Jones shortly after the death of plaintiff's intestate to the effect that defendant owned the car. This evidence was properly received. The contradictory statements were not entitled to be treated as assertions having substantive or independent testimonial value; they were entitled to consideration only as affecting the credibility of the witness; otherwise, they would have been obnoxious to the rule against hearsay.—2 Wigm. on Ev. § 1018. It would have been entirely proper for the court, ex mero at the time of its admission to inform the jury of the limited purpose for which such testimony was admissible; but the trial court cannot be put in error for overruling a general objection where the evidence is admissible for any purpose. It was the duty of the objecting party to invoke the action of the court to the end that a proper limitation of the evidence might be set before the jury.—*B. & A. Ry. Co. v. Mattison,* 166 Ala.608, 52 South. 59; *Lamar v. King,* 168 Ala. 292, 53 South. 279.

Condray, the driver or chauffeur, was called as a witness by both parties, first by plaintiff and then he was recalled by defendant. While he was testifying for plaintiff on his first appearance, defendant on cross-examination asked him whether Jones had ever told him that he owned the car. Plaintiff's objection was sustained, and that ruling is assigned for error. The witness had just testified that he did not know who owned the car "at the time," and possibly the previous course

of the examination showed well enough that this testimony and this question related to the period in which
the witness had been operating the car, viz., from a
time "just after the fair" to the time of the accident.
Appellant insists that since the machine was during the
period covered by the question in the actual possession
of Jones, or, in one view of the evidence, Jones' servant, the witness, and Jones had then no interest or apparent motive ·for misrepresentation, his declarations
of his ownership were admissible in her behalf to show
that she was not the owner.

On the general subject of the admissibility of such
declarations there may be some confusion of idea and
conflict of decision in our cases, as Prof. Wigmore has
observed in his work on Evidence, where many of them
are noted.—Note 8 to section 1779.   As the result of
our cases and the authorities generally, some general
principles may be stated.   Statements in disparagement of proprietary interest, when no motive for misrepresentation appears, are treated as entitled to consideration against the declarant and those claiming in
privity with him without regard to their connection
with possession or other concrete acts of ownership, on
the ground that common experience shows such self-
disowning statement to be entitled to some credit.   For
or against strangers such statements, when relevant to
the fact in issue, are received on the ground of necessity in case the declarant is dead or when for other reason his sworn testimony cannot be had.—*Hart v. Kendall,* 82 Ala. 144, 3 South. 41.

The possession of property under claim of ownership
is evidence of title, though it is of low grade and never
conclusive where inconsistent explanatory facts are
shown.   Claims of ownership are received in evidence
on a theory different from that obtaining in respect to

self-disowning declarations. · They are admitted without regard to their trustworthiness as psychological acts, not as evidence of the fact stated, but to explain a concurrent possession where the intent with which possession is held or the extent and character of the interest claimed are necessary to be considered in the determination of any issue involving a right of property or over property. Possession being the principal fact, such declarations are admissible as a part of the res gestæ of the possession itself.—*Humes v. O'Bryan,* 74 Ala. 64; *Daffron v. Crump,* 69 Ala. 77; *Payne v. Crawford,* 102 Ala. 387, 14 South. 854: "But to make such declarations evidence, they must be connected with the principal· fact under investigation. If the fact with which they are connected is not the material inquiry, or if the party is not sought to be charged because of the existence of the fact with which they are connected, they cannot be admitted as evidence."—*Tompkies v. Reynolds,* 17 Ala. 109.

Here the machine was at the time of the disaster in the undisputed sole actual possession of the witness Condray, and his agency, whether for defendant or Jones, was the fact in issue between the parties. Jones was not on the scene, and the declaration asked for must have been made at some other time. It certainly was not of the res gestæ of the accident. The ownership of the machine at the time was contested, and as we have indicated, competent evidence of ownership, as of a fact tending to prove or disprove Condray's agency for defendant, including the testimony of Jones, had, and was entitled to have, consideration; but ownership was contested, not as necessarily or even prima facie determinative of agency, but as a collateral fact having evidential force. But for this contested question of ownership at the time it is plain that Jones' declaration at

[Barfield v. Evans.]

a previous time would have been both irrelevant and incompetent. The dispute about ownership removed the objection of irrelevancy, but it did not bring the declaration inquired about within any recognized exception to the rule against hearsay. There was therefore no error in sustaining the objection to the question.

There were numerous other exceptions reserved on the admission and exclusion of evidence. The rest, we think, do not require separate treatment. In some instances the court admitted evidence of defendant's ownership of the automobile; in others, it excluded declarations made after the fact, clear hearsay; in others, declarations after the fact, where in conflict with the witness' sworn testimony, were admitted, after proper predicate had been laid, to impeach the witness; in others, questions were allowed merely to explain the occasion and circumstances of statements made by defendant and other competent and relevant facts; in still others, the exceptions were too obviously devoid of merit to deserve classification even; and in some instances the exceptions, though noted in the assignments of error, are not treated in brief or argument. Each exception has been considered without finding error.

Charge 9 was properly refused to defendant. Two words must be supplied to make it sensible. As the trial court was, under the statute, required to give or refuse the charge in the exact language in which it was requested, and was without authority to change its verbiage, verbal inaccuracy, affecting the meaning of the charge upon a strict construction, justified the court's refusal to give it.—*L. & N. R. R. Co. v. Lile*, 154 Ala. 556, 45 South. 699, and cases there cited.

Charge 10 also was verbally inaccurate, and was refused, possibly, for that reason. It might have been given without error, for in that event it would be held

that the court and jury gave it the sensible construction of which it was fairly capable. But it does not follow that its refusal was error. In matters of this character the record is construed with favor to the trial court. Appellant's argument for error in the refusal of the charge is that she stood in vital need of an authoritative statement to the jury that in order to a verdict for plaintiff it should appear, not only that Condray was in the employment of defendant (appellant), but that he was at the time of the disaster acting within the scope of his employment, especially so, since the court in its oral charge to the jury had not stated the last-named necessity of plaintiff's case. The court said nothing, nor was it in this charge requested to say anything, in reference to the necessity of proof that Condray was acting within the scope of his employment. The charge requested by defendant affirmed that the jury were to judge from the evidence whether the chauffeur, Condray, was acting within the scope of his employment; but it carried no instructions as to the operation and effect upon the case of a finding on that issue. It purported only to tell the jury that, if they believed from the evidence that Condray was not in defendant's employment, then they could not find for the plaintiff. But while this proposition was more than once stated to the jury in the court's oral charge and in charges given at defendant's request, there appeared in the evidence no substantial ground for questioning the fact that Condray, in whatsoever interest he was employed, was acting within the scope of his employment. The real controversy was whether in the carriage of passengers he was acting for defendant or for Jones only. In view of the facts that defendant had the full benefit of the main proposition of the charge, that there was no real exigency of the defense which demanded a state-

[Barfield v. Evans.]

ment of the law as to scope of employment, that even if there had been such exigency the charge requested by defendant failed to state it or to meet it, and that the charge was besides marred by verbal inaccuracy, we hold there was no reversible error in its refusal.

Charges 8, 11, and 12, refused to defendant, and cursorily mentioned in her brief on appeal, might have been given without error; but there was no error in their refusal because they failed to predicate the several postulated findings or mental status of the jury as based upon the evidence. This is enough to justify their refusal.

It has appeared in what we have heretofore said that the question of defendant's liability was properly submitted to the jury. We are not at all of opinion that there was any overwhelming preponderance of the evidence in favor of the defense. On the contrary, we think it probable the jury reached a right conclusion. At least, the contrary does not appear, and the result must be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., concur. MAYFIELD and DE GRAFFENRIED, JJ., dissent.

DE GRAFFENRIED, J.—(dissenting).—"When the act of a party is admissible in evidence, his declarations at the time explanatory of that act are also admissible as a part of the res gestæ. This class of evidence is generally regarded as original evidence."—*Lake Shore, etc., R. Co. v. Herrick,* 49 Ohio. St. 25. 29 N. E. 1052; 15 Amer. & Eng. Ency. Law, p. 315, subd. C. In this case the act of Jones—the fact that he was at a particular time, in possession of the automobile—was, admittedly, material evidence, and it seems clear that his declara-

tions made at the particular time explanatory of that act was admissible, not as hearsay, but as original evidence. In this case the complaint charges, in express terms, that the plaintiff's intestate was killed by an automobile which belonged to the defendant. Neither the defendant nor Jones was in the automobile when the plaintiff's intestate met his death. That the plaintiff's intestate came to his death through the culpable negligence of the chauffeur was not questioned. If Jones owned the automobile, then the defendant is not liable. The defendant's ownership of the automobile was therefore, under the very language of the pleadings, the only real question which was actually litigated in this case.

"The occupation of land" (and the same rules apply to the possession of personal property) "is, merely as a physical act, capable of various interpretations, and may need to be completed by words in order to have legal significance. What a man says when he does a thing shows the nature of the act and is a part of the act."—1 Greenleaf on Evidence, § 108.

"The same rule prevails, in its utmost extent as to personal property. Thus, on appeal between two towns, contesting the settlement of a negro, it seems that the declarations of a person [and this person was not a party to the suit] made in respect to his title to the negro, while in possession of the negro as a slave, are receivable in evidence."—1 Phillips on Evidence (Cowen & Hills and Edwards notes), p. 197.

The rule laid down by this court in *Tompkies et al. v. Reynolds*, 17 Ala. 109, cited by Mr. Justice SAYRE in the opinion which has been adopted by a majority of this court, is perfectly sound, in no way conflicts with the views above expressed, and, in my opinion, has nothing to do with the question now in hand. In this case the ownership of the automobile was directly in issue. The

chauffeur in charge of the automobile was not the defendant's chauffeur if the automobile belonged to Jones. That is an uncontroverted fact. In the case of *Tompkies, et al. v. Reynolds, supra,* this court calls attention to the fact that ownership was not material to any issue involved in the case, and that the rule was invoked in the case, and that the rule was invoked simply as a cloak to get in before the jury a self-serving declaration of one of the parties to the cause. In that case the court says: "The material fact was not whether he" (Hardy, a party to the cause) "had actually had possession of the notes, or whether he handed them to the witness, but whether the contract was binding upon the firm. The plaintiff did not seek to show that the contract was binding on the firm because Hardy had possession of the notes, or because he handed them to the witness, but this proof was introduced by the defendant Hardy himself, and to permit him to introduce his own declarations in connection with a fact not relied on by the plaintiff, nor connected with the material fact involved, would be to enable a defendant to make his own declarations evidence in his favor, when the fact with which they are connected is not brought out by the plaintiff, nor the ground on which he is sought to be charge."

In the instant case the plaintiff sought to fasten liability upon the defendant by showing that his intestate was run over and killed by an automobile belonging to the defendant through the negligence of her chauffeur and while that chauffeur was acting within the line or scope of his employment. The defendant claimed that the automobile did not belong to her, but that it belonged to Jones, and she offered to prove that Jones, before the cause of action arose, was in the actual possession of the automobile claiming it as his own. She offered

no declaration of her own, but did offer the declaration of a third party who was in possession of the automobile when he made the declaration and in whom there was evidence tending to show that the possession of the automobile continued from the time of the declaration sought to be introduced up to the moment of the death of plaintiff's intestate.

As I understand it, the majority of this court are of the opinion that the real question in this case is: "For whom was the chauffeur acting at the time the plaintiff's intestate was killed? Was he, or was he not, the defendant's agent? If he was the defendant's agent, then the defendant was liable. If he was not the defendant's agent then the defendant was not liable."

All the above is perfectly true, but the question of the ownership of the automobile is so bound up with this question of agency that, to use the language of this court in *Tompkies, et al. v. Reynolds, supra,* it is inseparably "connected with the material fact" (the agency of the chauffeur) "or inquiry under investigation" and in reality forms a part of that "material fact or inquiry under investigation."

An illustration may fully explain my views: A hotel keeper has been accustomed to keep in connection with his hostelry a carriage and horses and a driver. The carriage and horses have been kept on the hotel premises, and the driver has been accustomed to meet the trains with the carriage and horses and bring customers to the inn. One day the carriage and horses and driver leave the hotel and take up their quarters in a livery stable. From that time forward, there is evidence tending to show that the driver and the carriage and horses act under the orders, not of the hotel keeper, but of the liveryman. Later on the driver of this carriage and horses recklessly drives the carriages and

horses over a pedestrian. This pedestrian sued, not the livery keeper, but the hotel man, for damages, and alleges that he was injured by the carriage and horses of the hotel man, through the negligence of an agent, the driver, of the hotel man while acting within the line or scope of his employment. The hotel man introduces evidence tending to show that, on the day the driver and the carriage and horses went to the livery stable, he sold the carriage and horses to the liveryman, and that on that day the liveryman hired the driver; that since that time the liveryman has been in the exclusive possession of the carriage and horses, and that the driver has been in the sole employment of the liveryman. It seems to be too plain to admit of argument that, under the circumstances named, the hotel man, as original evidence, would have the right to show, if he could, that, after the carriage and horses went into the possession of the liveryman and while they were thus in his possession, the liveryman said that they were his own.

"What a man says when he does a thing shows the nature of the act and is a part of the act."—1 Greenleaf on Evidence, § 108.

I have examined, with much care, the authorities which have been cited by the majority of the members of this court in support of the position that they have assumed, but, in my judgment, they are not in point. We have, in my opnion, a plain rule of law which the trial court has violated, and for that reason, in my opinion, the judgment of the trial court should be reversed. The known certainty of a rule of law is, I am pursuaded, even more valuable than its wisdom, for the known certainty of the law, to use the language of Lord Coke, is the safety of all. I am also persuaded, to again use the language of Lord Coke, that to "fine and refine" upon a rule of law until its application becomes, to the aver-

age man, one of doubt and perplexity, is more pregnant of evil than, if need be, to somewhat broaden it and apply it in cases where there may be some possible reason for doubt.

In this case the question of agency may have been of prime importance, but this question of agency rested upon the question of ownership. If the defendant did not own the automobile—if the automobile belonged to Jones—then the chauffeur was not the defendant's agent. If the chauffeur was not the defendant's agent, then the plaintiff was not entitled to recover. If the foundations of an edifice are knocked from under it, the edifice fails to the ground. The ownership of the automobile was the foundation upon which rested the plaintiff's case, for upon that rested the plaintiff's theory that the chauffeur was the defendant's agent and that she was therefore liable for his negligence.

2. Jones, it is true, took the stand and testified that at the time of the death of the plaintiff's intestate the automobile belonged to him. This circumstance, I think, did not destroy the relevancy of the above evidence, nor do I think that it should have any weight with this court, in passing upon the above question. Pertinent evidence is always admissible. Its sufficiency is a question exclusively for the jury.—*Alsabrooks v. State,* 52 Ala. 24.

A statement by Jones, made prior to the day on which the plaintiff's intestate was killed, and while he was in possession of the automobile, could not have been made with the view of aiding the defendant in this case. His testimony on the trial might have been given with the view of aiding her.