## BABCOCK v. HUNTINGTON.

1. A package containing a deposition taken in Texas, upon which is a certificate purporting to be made by the post master at Richmond, Texas, to the effect that it was deposited in his office by one of the commissioners, which is post-marked, Richmond, Texas, the word ship printed on the envelope, and addressed to the Clerk of the Circuit Court of Dallas county, Cahawba, and also post-marked New Orleans, if the package reaches its destination without any mark of violence, it is *prima facie* evidence that it was fairly transmitted.

2. One who had purchased a slave, paid the principal part of the purchase money, and afterwards rescinded the contract, and retained possession of the slave by a contract of hire, is a competent witness for the vendor, in a suit by him against one who purchased the slave at a sale by execution, as the property of the witness. His competency does not depend upon the fact of the vendor having repaid the purchase money, upon the rescission of the contract.

3. What was said or done by either party, upon the rescission of the contract, is a fact, and may be proved as such, when the fact of a rescission comes in question.

Error to Dallas Circuit Court.

TROVER by the defendant, against the plaintiff, for the conversion of a slave.

Upon the trial, as appears from a bill of exceptions, the plaintiff produced and offered to publish, a packet, containing a deposition received by the clerk, through the post office at Cahawba. Upon the envelope was an indorsement, purporting to be made by the post master at Richmond, Fort Bend county, Texas, to the effect that the package was deposited in the post office at that place, by one of the commissioners. It was post-marked, "Richmond, Fort Bend county, Texas," and addressed to the Clerk of the Circuit Court of Dallas county, Cahawba. The word "ship," was printed on the envelope, and the post-mark of the New Orleans post office stamped. Both the post-mark at Richmond and at New Orleans bore the date of 184 . There was no other evidence

of the mode of transmission. The defendant objected to the publication of the testimony, which the court overruled, and he then objected to the reading of it, which the court also overruled, and he excepted.

The deposition was made by one Stephen Miller, and the slave in question had been sold under execution, as his property, and purchased by the defendant. Miller proved, that some time previous to the sale, a conditional sale of the slave had been made to him by the plaintiff, the terms of which were, that no title was to vest in him, until he had completed the payment. That the condition not having been complied with, the bill of sale was delivered up to plaintiff, and the sale cancelled. That after this rescission, the slave remained in the possession of Miller, on a contract of hire, until he absconded. This was all previous to the levy, or sale of the slave. The defendant moved to exclude the testimony, which motion the court overruled and he excepted.

One Borden, a witness for the defendant, testified that a bill of sale, absolute in its terms, was made by the plaintiff to Miller, and which was produced in evidence, and conveyed the slave for the consideration of $450, was about a month or six weeks before Miller absconded, brought to witness by Miller, and the plaintiff—that they stated that Miller not having paid all the purchase money, was not entitled to it, and wished to deposit it with witness, who had been the agent of the plaintiff to receive hire for the slave. At the time of these statements, the slave was in possession of Miller—the defendant was not present.

The counsel for the defendant moved to exclude from the jury, the declarations of Miller, which was refused, and he excepted.

There was evidence tending to show, that the slave remained in Miller's possession from the time of his purchase until he absconded, controlling him as his own, and was reputed to be his owner. Also, that Miller had paid all the purchase money but seventy or eighty dollars, and that Miller had obtained possession of the bill of sale by mistake. A knowledge of all these facts was brought home to the defendant before he purchased.

The court charged the jury, that if they believed, that the

contract between the plaintiff and Miller, was, that the title of the slave should not pass out of the plaintiff, until the payment of the whole of the purchase money—and if it had not all been paid, and the contract was rescinded before the levy and sale of the slave under execution, or before any *lien* atta ched, that then, although the proof might show that the whole of the purchase money, except seventy or eighty dollars, had been paid, the plaintiff was entitled to recover the value of the slave. To this charge the plaintiff excepted, and now assigns all these matters as error.

R. SAFFOLD, for plaintiff in error, contended, that the deposition was improperly received, and that there was no guaranty against fraud, and imposition, in the mode here adopted for its transportation from Texas.

That the witness, Miller, was incompetent from interest, being directly interested to sustain the title of the plaintiff, as otherwise he could not recover from him, the purchase money paid on account of the slave. [3 Phil. Ev. C. & H. Notes, 1531-36 ; 6 Paige, 76.]

T e declarations of Miller, were improperly received, not only because it contradicted the deed, but also because it was was evidently collusive.

The charge of the court was manifestly wrong. Conceding that his title was conditional, such as it was, it was liable to be sold for his debts. [2 Stew. 276.]

G. W. GAYLE, contra, cited, 1 Ala. 660 ; 3 Id. 123, 440 ; 4 Id. 336.

ORMOND, J.—Our statutes authorize the taking of depositions as a mode of adducing testimony, but there is no statute, or rule of court prescribing the mode of transportation, when the deposition is taken at a distant place. As it would be exceedingly inconvenient, and expensive, to send a special messenger, the mail has been adopted as a proper mode of conveyance, and when the package bears the post mark of the U. S. mail, and no marks of violence appear on the envelope, our practice has been to consider it as *prima facie* ev-

idence, that it was in the condition in which it came from the hanps of the commissioner.

In the case of Innerarity v. Mims, 1 Ala. 665, the question was presented as to the proper mode of bringing a deposition to the notice of the court, taken beyond the limits of the U. States. It was there held, that it would be sufficient for the commissioner to certify upon the deposition, that he had placed it on board some vessel, naming it, destined to some place in the United States, or in some post office, to be sent by mail, to some post office in the U. States, and if it came to hand post-marked accordingly, the presumption, in the absence of proof to the contrary, would be, that the statement was true.

In this case, the post-master in Texas, has certified that he received it from the commissioner. It bears the post-mark of his office, and that of the post-office at New-Orleans, and arrives according to its direction at the post-office in Cahawba, without any marks of violence, or any circumstance attending it, calculated to awaken suspicion of unfair dealing. In our opinion, this is sufficient evidence, *prima facie* at least, that the deposition has been fairly transmitted. The evidence of its fairness is such, as would be acted on without doubt, in any of the ordinary transactions of life, and we can perceive no reason, in the absence of a positive regulation requiring the observance of particular forms, why it should not also be acted on in courts of justice. In our opinion, the mode of certifying the deposition in this case, is quite as satisfactory as the mode indicated in the case referred to.

We will take notice of the usual mode of intercourse between this and other countries, and if it is by vessels, the presumption is, that the post-master of the foreign country, places it on ship board, and on the arrival of the ship at its place of destination, it will by the proper officer be again put in the post-office, which will be indicated by the post-mark at that place.

That this letter was designed to be transported in part by sea, is indicated by the word " ship," marked upon it ; and we judicially know, that from Texas to New-Orleans, the usual route is by water. (See the case already referred to, 1 Ala. 665.)

Babcock v. Huntington.

The objection to the witness Miller, rests upon the ground of interest. The facts that he deposed to, were, that he had purchased the slave in question from the plaintiff, and had paid the principal part of the purchase money, when he and the plaintiff agreed to rescind, and did rescind the contract, after which, and until he left the country, he hired the negro from the plaintiff. After this, the negro was sold under execution against him, and purchased by the defendant. He is supposed to be interested, because, if the plaintiff does not succeed, he will not be able to recover back the purchase money he had paid the plaintiff before the rescision of the contract.

The answer to this, is, first, that it does not appear that the plaintiff has not paid him already ; such would be the natural presumption, in the absence of proof. But secondly, if he still owes him the money, he cannot avoid the payment of it, because the slave has been sold for the payment of Miller's debts. Surely, it would be no answer to Miller, sueing for his debt, that a stranger had seized the property of Huntington, and appropriated it to the payment of a debt Miller owed a third person. If, as the argument supposes, he still owes Miller the four hundred dollars, he cannot avoid the payment of it, by the payment of a debt Miller owes another, either voluntarily or involuntarily, by a trespass committed on him.

It might, indeed, perhaps, well be doubted, whether he had not an interest directly adverse to the party calling him. The effect was to discharge a debt, which he owed, by the sale of the slave ; and if this sale is declared invalid, it might subject him, to an action, at the suit of the purchaser, for the recovery of the money, as so much paid to his use. Be this as it may, he certainly had no legal interest in swearing in favor of the plaintiff, and if from his condition, he may be presumed to have a bias in favor of either, it would go to his credit.

The objection to the testimony of Bowden, is, that it relates to the declarations of Miller. The declarations, here referred to, is the conversation, which took place at the time of the rescision of the contract. This is, properly speaking,

a fact. It is difficult to imagine, how the rescision could be established, but by proving what the parties said, and did, when it took place, and as it regards the hiring of the slave by Miller, the witness says he was the agent of the plaintiff. If however they are considered as the mere declarations of Miller, being declarations in regard to his title to property then in his possession, and made against his interest, they would be admissible. [Willes v. Farley, 3 Carr. & P. 395; Garey v. Frost & Dickinson, 5 Ala. 640; Bliss v. Winston, 1 Ala. 344, and many subsequent cases]

We need not enter upon the enquiry, whether it was admissible to prove, that the bill of sale though absolute in its terms, was intended to be conditional, and that the title was to remain in the vendor, until the purchase money was paid, because it seems to us wholly immaterial. Whether the sale was absolute, or conditional, if it was cancelled before the *lien* of the execution attached, under which the defendant claims as purchaser, he has no interest in the question, as in either event he could not derive title through the execution.

This transaction has certainly a very suspicious appearance; but with the *bona fides* of the matter, we have no concern; that was exclusively for the consideration of the jury. If the contract between Miller and the plaintiff was in fact rescinded, the title to the slave immediately revested in the plaintiff; and if he was then and still remains indebted to Miller, for the purchase money which had been paid previous to the rescission of the contract, that could not affect his title to the slave, or subject it to the payment of Miller's debts, unless whilst he owned it, a *lien* had been acquired upon it, a question upon which the jury have passed.

This was the law, as given by the court to the jury, and its judgment must therefore be affirmed.