## HOOPER vs. EDWARDS.

1. Declarations inseparably connected with material acts, which they serve to elucidate and explain, are admissible evidence as part of the *res gestae*.
2. But declarations made after suit brought, and not connected with any fact or act whatever, are not admissible evidence for the party making them.

ERROR to the Circuit Court of Russell.

Tried before the Hon. E. Pickens.

The plaintiff commenced an action of assumpsit against Bryant S. Mangham, and pending the suit, sued out an ancillary attachment, which was levied on certain property; and Laxla Edwards, the defendant in error, was also served with a writ of garnishment. The attachment was issued on the 24th of November, 1848, and the defendant summoned as garnishee on the 30th of the same month. The garnishee appeared and answered, denying any indebtedness to Mangham, and further denying that he had any property of Mangham's in his possession. This answer was contested, and an issue was made up under the statute, between the plaintiff in the attachment and Edwards, the garnishee. Upon the trial of this issue, it appeared that the garnishee had in his possession, at the time of the service of the writ, three slaves, Dan, Franky and Henry, a road wagon and several other articles of property, that had belonged to the defendant in the attachment. The garnishee then proved that he was a deputy sheriff of Russell county, and as such, had in his hands sev-

eral executions against Mangham, which, however, had not been levied on his property; that in March, 1848, he had bought Mangham's land, and hired his negroes, about eight in number, and that on the night of the 25th of November, 1848, Mangham left the county of Russell clandestinely, and carried with him all his negroes, except the boy Henry, who had been previously levied on by Edwards, by virtue of an attachment issued at the suit of one Reese against Mangham. Edwards, ascertaining that Mangham had left, carrying with him his slaves, employed one Thornton to pursue him. Thornton overtook him the next day, being Sunday, about sixty miles west from the place he had left in Russell county, and then purchased from Mangham the two slaves Dan and Franky, valued at twelve hundred dollars, for and on account of Edwards; and it was further shown that the contract was, that Edwards should pay off the executions he had in his hands and some others against Mangham. Thornton, the agent of Edwards, returned to Russell county, and Edwards ratified the contract thus made. It also appeared, that the slave Henry had been sold since the service of the garnishment, under an execution in favor of Reese, which had been issued on the judgment rendered in the attachment suit, and after satisfying this debt, the residue of the purchase money had been applied by Edwards to other executions in his hands. It further appeared, that the road wagon and the other articles of property belonging to Mangham, had been sold by Edwards, and the proceeds applied in the same manner, but there was no evidence that the wagon and other property had ever been levied on by virtue of any process.

The witness Thornton was asked to state the object Edwards had in sending him after Mangham. The witness answered, that Edwards told him that his object was, to secure himself from liability which he had incurred as deputy sheriff, by giving Mangham indulgence on executions he had in his hands against him, and which executions he then placed in his agent's hands. The plaintiff objected to this answer of the witness, but his objection was overruled, and the plaintiff excepted.

The garnishee also introduced James Johnson as a witness, who testified that in the year 1849 he had a conversation

with Edwards, the garnishee, in which Edwards said he would pay off a judgment in favor of one Crews, for about four hundred dollars, against Mangham, in the event there was any surplus of Mangham's funds remaining in his hands to pay it. It also appeared that Mangham had been indulged on this judgment by Crews, and that the execution had lost its lien, but that this debt to Crews was one of the debts that the garnishee, Edwards, agreed to pay, in consideration of the purchase of the two slaves Dan and Franky. The plaintiff objected to what the garnishee said to the witness in 1849 as evidence, but his objection was overruled, and the plaintiff excepted.

The instructions of the court to the jury were also excepted to by the plaintiff, but it is not deemed material to state them.

HOOPER, for plaintiff in error.

BELSER, contra.

DARGAN, C. J.—We think it was clearly admissible to prove what Edwards said to Thornton, at the time he gave him the executions and appointed him his agent to pursue Mangham. What he then said was not mere declarations, or admissions, unaccompanied by acts material to be considered on the investigation of this cause. But on the contrary, they were declarations inseparably connected *with material acts*, and served to elucidate and explain them. Our reports abound with decisions showing that such declarations are admissible as part of the *res gestae*. Williams v. Shackelford, 16 Ala. 318; Tompkies v. Reynolds, 17 Ala. 109; Mawhinney & Smith v. Thompson, ib. 362; McBryde & Wife v. Thompson, 8 Ala. 650; Yarborough v. Moss, 9 Ala. 382; Babcock v. Huntington, 9 Ala. 869.

But we think it equally clear that the court did err, in permitting the witness Johnson to state what Edwards, the garnishee, said to him in 1849, respecting his intention to pay the debt of Crews if there should be left in his hands a surplus of the funds of Mangham. What Edwards then said was a mere declaration, made after this suit was pending, and not connected with any fact or act whatever. To allow such

declarations, would be to enable parties, *even after suit brought*, to make testimony by their own declarations. No rule of law will justify the admission of such declarations.

As the judgment must be reversed for this error, we do not deem it necessary to examine the instructions given by the court to the jury with particularity, for the case is of that description that it is by no means certain that upon another trial it will be presented in exactly the same phase. We however think it not improper to suggest the proper inquiries that should have been submitted to the jury, according to the evidence as contained in this bill of exceptions.

If the jury should believe, that the contract entered into between Mangham and the agent of Edwards is valid, according to the principles heretofore decided in this case, they then should inquire and ascertain, what debts due by Mangham Edwards assumed to pay in consideration of the two slaves, Dan and Franky. They should further inquire, whether Edwards agreed to pay these debts, irrespective of the value of Henry, whom Edwards had in his possession by virtue of a levy made under the writ of attachment in favor of Reese; or whether it was the understanding that the value of Henry should be applied to those debts, and that in consideration of the other two slaves, Edwards was to pay the residue of the debts left unpaid, after applying the value or proceeds of Henry to their payment. If they should find that the contract was, that Edwards agreed to pay the debts irrespective of Henry's value, then he would be liable to the plaintiff to the extent of Henry's value; but if he agreed to pay the debts, or the balance of them, after applying the proceeds of Henry to their extinguishment, then he would not be liable on account of Henry. They should also inquire, whether the contract embraced the wagon and other articles of property; if it did not, then Edwards must be liable for the wagon and other articles of property, unless they were levied on and sold to satisfy other debts than those agreed to be paid by Edwards. I have suggested the foregoing as the points of inquiry that will probably arise upon another trial. The testimony, however, may vary them, and the court must be governed by the evidence as it shall appear upon the trial.

Let the judgment be reversed, and the cause remanded.