# Cooper *v.* The State.

*Indictment for Grand Larceny.*

1. *Preliminary questions to witness, as to age, occupation, &c.*—It is a common practice, where a witness is put on the stand, to ask him his age, residence, condition in life, etc.; which questions are merely introductory, intended to aid the jury in putting a proper estimate on his testimony, and hardly the subject of exception. Under this practice, the prosecutrix in a criminal case may be asked, "if she was a widow."

2. *Declarations of defendant; when not admissible as part of res gestæ.* Where the defendant was arrested under a charge of larceny, and at first denied having any of the stolen money, but afterwards offered to tell the police-officer, who professed to "know all about it," where the money was, and said, that it was buried under the hearth in his house; and the officer having failed to find the money in the place indicated, the defendant went to his house with the officer, raised a brick in the hearth, and disclosed the money; and "after pointing out the money, *defendant said it was given to him by*" a servant in the employment of the prosecutrix; *held,* that this declaration was not admissible evidence for defendant, not being explanatory of possession, nor a part of the *res gestæ.*

From the City Court of Mobile.
Tried before the Hon. O. J. SEMMES.

N. McCARRON, for the prisoner, cited 1 Greenl. Ev. §§ 51, 52, 218; *The State v. Parke,* 48 Ala. 266; *Insurance Co. v. Moseley,* 8 Wallace, 397; *Rawson v. Haigh,* 2 Bing. 99; *Rex v. King,* Russ. & Ry. 331; *State v. Gilliam,* 50 Ala. 145; *Miller v. The State,* 54 Ala. 155; Burrill on Cir. Ev. 476-7; *Liles v. The State,* 30 Ala. 24.

H. C. Tompkins, Attorney-General, for the State.

MANNING, J.—It is a common practice, on introducing a witness, to make inquiries of him respecting his age, residence, and condition in life. The answers, it is supposed, may aid the jury in setting a proper estimate on the evidence he may give. The question of the State's solicitor to Mrs. Fulton, "if she was a widow," was of this initiatory kind, and hardly subject to exception.

Appellant was prosecuted for the larceny, from Mrs. Fulton, of money and other things, among which was a $20 gold-piece. Other important testimony having been submitted on the part of the State, a police-officer (one Bressingham) testified that, on arresting defendant, he said to him, that he had a $20 gold-piece which witness would like to see; to which defendant answered, "that he had no gold-piece, or money of any description." He was then taken to the guard-house; but before locking him in, witness said to defendant: "I know all about it, and am going to find it." Defendant then replied: "Since you know so much about it, I am going to tell you where it is." And he then told witness that the gold-piece was buried under the hearth of defendant's house, in Warren street. Nothing more was then said. Witness went to the house on Warren street, made a search for the money, and failed to find it. Returning, he informed defendant of this, and asked him if he would go and point out the money. He answered, that he would; and going to his house with witness, raised a brick in the hearth, and pointed out the $20 gold-piece. After doing so, defendant said that Jane Spear, a servant of Mrs. Fulton, had given him the money; and the witness having related this to the jury, the presiding judge, on motion, immediately made, of the State's solicitor, ruled out and excluded the declaration; to which defendant excepted.

Appellant's counsel is mistaken, in supposing that this declaration was admissible as of the *res gestæ*. What a person says that is explanatory of an equivocal or ambiguous act which he is then doing, or situation which he is then occupying—as that of a person in possession of property,—may be proved as *res gestæ*—a part of the thing then going on—to elucidate and define the character of such equivocal act or situation. Words so connected with, and illustrative of it, are considered as appertaining to the act or situation, and, like expression on the human face, as indicating character, the character of the act or situation which they relate to, and are blended with. This is the central idea of the doctrine respecting what is called *res gestæ*. In language

quoted in the able argument of appellant's counsel, " In the complexity of human affairs, what is done, and what is said, are often so related, that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud, or falsehood, as to both ; but there is no ground of objection to one, that does not exist equally as to the other. To reject the *verbal fact,* would, not unfrequently, have the same effect as to strike out the controlling member from a sentence, or the controlling sentence from its context."

The difficulty is in clearly discerning when such a relation or connection between language and acts exists. In *Rawson v. Haigh* (2 Bingh. 99), referred to for appellant, the question was, whether a departure from England was an act of bankruptcy ; and that depended upon the intent of the person absenting himself. To show this intent, a letter written in France, a month after he went away, was received in evidence. Why? Because, being written during his stay abroad, it showed the reasons of his then continuing absence, and, by consequence, of his departure. It was explanatory of the writer's situation,—that of an absentee staying away to hinder and delay his creditors in England. " The departing the realm," said BEST, C. J., " is a *continuing* act, and these letters were written during its continuance."

But, there are numerous decisions of this, and of other courts, that words merely narrative of something past, as of the manner in which the speaker obtained title to property in his possession, are not admissible as *res gestæ.*—See 1 Brickell's Dig. p. 843, §§ 554 *et seq.* And precisely of this kind was the declaration of defendant, that Jane Spear had given him the $20 gold-piece. If, by saying this at the time he said it, defendant could discharge himself of the offense which other evidence tended to show he had before that time committed, a shrewd law-breaker could easily contrive to manufacture evidence to screen him from legal condemnation. There was no error in excluding the declaration.

It appears to us that there was no foundation in the evidence for the two charges asked for appellant which the judge refused to give to the jury.

The judgment of the City Court must be affirmed.