(89 South. 732)

**UNITED STATES FIDELITY & GUARAN-TY CO. v. MILLONAS. (6 Div. 147.)**

(Supreme Court of Alabama. May 12, 1921. Remittitur Filed May 26, 1921.)

**1. Master and servant ⚬⇒341—Insurer liable for causing discharge of insured's employé.**

A casualty company, insuring an employer against loss through accidental injury to employés by a policy stipulating that insurer may cancel the policy at will, is liable to an employé seeking settlement for an injury if it causes his discharge by threat to cancel the policy in an effort to accomplish settlement for a nominal sum.

**2. Insurance ⚬⇒93 — Casualty company held liable for its agent's acts in securing discharge of employé of another.**

Where an adjuster of claims for a casualty company insuring employers against loss for accidental injury to employés was in full charge of such department, handling settlement for all such claims within the state, his immediate superior being vice president of the company, the company was liable for his act in causing the discharge of an injured employé seeking a settlement by threat to cancel the policy to the employer, unless settlement was effected for a nominal sum; such act being within the scope of his employment.

**3. Master and servant ⚬⇒341—Procurement of wrongful discharge held question for jury.**

In an action by an employé against a casualty company insuring the employer, for procuring discharge of the employé for refusal to settle a claim for a nominal sum, evidence *held* sufficient to carry to the jury the question of whether the defendant procured the discharge.

**4. Evidence ⚬⇒244(8) — Declarations of an agent held binding on the principal.**

In an action by an employé against a casualty company for procuring his discharge from the employ of another, evidence of statements by the adjuster of defendant in an attempt to procure settlement with plaintiff's attorney that if it were not effected he would procure the discharge of plaintiff was admissible, as made within the line of his employment and binding on the casualty company.

**5. Evidence ⚬⇒121(4)—Employer's statements to employé of reasons for discharge held res gestæ.**

Where an injured employé sued a casualty company for procuring his discharge for his refusal to settle for a nominal sum, the reason for his discharge being a pertinent issue, declarations thereto made by the employer at the time of the discharge were admissible as part of the res gestæ, and it was not error to permit the employé to testify thereto.

**6. Witnesses ⚬⇒389 — Witness having denied making statements to another, such other might testify thereto.**

Where in an action by injured employé against casualty company for procuring plaintiff's discharge for failure to settle for nominal sum the employer denied discharging plaintiff, or that the agent of the casualty company had instructed him to do so, and denied that he had so stated to G., there was no error in admitting the testimony of G. as to statement to this effect, made by the employer to him on the day plaintiff was discharged.

**7. Appeal and error ⚬⇒1052(3)—Harmless error to admit evidence which later became pertinent and was then admitted.**

If it were error to admit evidence of the declarations of defendant's agent, charged with procuring the discharge of an employé, such error became immaterial, where the evidence was subsequently properly admitted to meet denial by the agent as a witness as to the making of statements.

**8. Master and servant ⚬⇒341—Mental anguish element of damage for procuring discharge.**

A servant, recovering against third person for procuring his discharge, may recover for mental anguish.

**9. Trial ⚬⇒199—Instructions, requiring jury to decide question of law, properly refused.**

Requests for instructions which would have required the jury to have decided questions of law were properly refused.

**10. Master and servant ⚬⇒341—Evidence held admissible to show wrongful procurement of discharge.**

In an action by an injured employé against a casualty company, insuring employer for wrongfully procuring his discharge by threat to cancel policy if he did not settle for a small sum, evidence showing permanency of the injuries was admissible to show that the amount offered was merely nominal, and as indicating motive.

**11. Master and servant ⚬⇒341—Damages for procuring discharge held excessive, though punitive damages were allowable.**

A verdict for $25,000 damages against a casualty company for procuring the discharge of an injured employé refusing to settle for nominal sum *held* excessive, though properly including punitive damages, and, the actual injury shown not exceeding $3,000, the amount should be reduced to $6,000.

**12. Appeal and error ⚬⇒1140(2) — Supreme Court held entitled to designate proper amount of recovery.**

Where a servant recovered a judgment for $25,000 against a third person for procuring his discharge, the actual loss not exceeding $3,000, it was the duty of the Supreme Court on appeal under the provision of Acts 1915, p. 610, to designate what in its opinion would be a just amount of recovery and afford the plaintiff opportunity to accept or reject such proper amount.

**13. Costs ⚬⇒260(1)—Modification by remittitur held not an affirmance as to penalty for frivolous appeal.**

Where an injured employee recovered a judgment for $25,000 against a casualty company for procuring discharge by employer and the Supreme Court on appeal provided for remittitur reducing the amount to $6,000, such

⚬⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

modification was not an affirmance within the provision as to penalty for frivolous appeal.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by John Millonas against the United States Fidelity & Guaranty Company for damages for causing loss of employment. Judgment for the plaintiff, and the defendant appeals. Upon remittitur of damages filed in writing, in accordance with the opinion, by the plaintiff, the judgment is affirmed. The facts upon which the opinion is rested sufficiently appear therefrom.

Coleman, Coleman & Spain, of Birmingham, and Steiner, Crum & Weil, of Montgomery (Joseph A. McCullough, of Baltimore, Md., of counsel), for appellant.

The plaintiff was without cause of action, as the act done or threatened was a lawful act, or such an act as he has a lawful right to do. 163 Ala. 348, 50 South. 1008; L. R. 1898, App. Cas. 1; 68 Vt. 219, 35 Atl. 53, 33 L. R. A. 225, 54 Am. St. Rep. 882; 101 Va. 414, 44 S. E. 721, 99 Am. St. Rep. 914; 255 Ill. 213, 99 N. E. 389, Ann. Cas. 1913D, 347; 231 Ill. 42, 83 N. E. 94; 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233; 91 Ky. 121, 15 S. W. 57, 11 L. R. A. 545, 34 Am. St. Rep. 165; 90 Me. 166, 38 Atl. 96, 60 Am. St. Rep. 253; 138 Mo. 439, 40 S. W. 93, 36 L. R. A. 804, 60 Am. St. Rep. 560. As to the liability of the corporation for the acts or declarations of its agents for an injury done to another, counsel cite 16 Ala. App. 460, 78 South. 723; 200 Ala. 262, 76 South. 28, L. R. A. 1918A, 115; 199 Ala. 192, 74 South. 69; 192 Ala. 403, 68 South. 328, L. R. A. 1915F, 516; 187 Ala. 458, 65 South. 402; 186 Ala. 92, 64 South. 614; 181 Ala. 456, 62 South. 12; 175 Ala. 319, 57 South. 718, 40 L. R. A. (N. S.) 998; 145 Ala. 664, 39 South. 727; 107 Ala. 233, 18 South. 166, 29 L. R. A. 729, 54 Am. St. Rep. 67; 135 Ala. 205, 33 South. 438, 93 Am. St. Rep. 31; 70 Ala. 207. As to the inadmissibility of the declarations of the agent as evidence against his principal, they cite 196 Ala. 365, 72 South. 34; 156 Ala. 369, 47 South. 48; 152 Ala. 166, 44 South. 627, 12 L. R. A. (N. S.) 389; 128 Ala. 266, 29 South. 586; 107 Ala. 640, 18 South. 266; 97 Ala. 275, 12 South. 276; 111 Ala. 453, 17 South. 934; 22 C. J. 372; 119 U. S. 99, 7 Sup. Ct. 172, 30 L. Ed. 299. As to the declarations made after the transactions by an agent, they contend that they were inadmissible on any theory and cite all the authorities cited next above, together with the following: 196 Ala. 665, 72 South. 264; 196 Ala. 61, 71 South. 701; 152 Ala. 227, 44 South. 699, 126 Am. St. Rep. 23; 187 Ala. 579, 65 South. 928; 100 Ala. 493, 14 South. 204; 84 Ala. 149, 4 South. 618; 18 Ala. 479, 52 Am. Dec. 230; 72 Ala. 102; 48 Ala. 15; 156 Ala. 369, 47 South. 48; 184 Ala. 443, 63 South. 952; 93 Ala. 181, 9 South. 577; 178 Ala. 636, 59 South. 461; 91 Ala. 271, 9 South. 334. Impeachment cannot be had upon irrelevant or immaterial or collateral facts, nor can a fact incompetent as evidence be made the predicate for impeachment. 197 Ala. 603, 73 South. 40; 196 Ala. 61, 71 South. 701; 196 Ala. 665, 72 South. 264; 129 Ala. 6, 29 South. 860; 80 Ala. 208; 72 Ala. 112, 47 Am. Rep. 403, and authorities cited. Statements made to third persons by one not a party to the suit, though they may relate to the issue, are not admissible in evidence. 106 Ala. 382, 17 South. 709; 187 Ala. 128, 65 South. 778; 196 Ala. 21, 71 South. 338; 81 Ala. 552, 8 South. 225; 128 Ala. 148, 30 South. 668. Smith was not acting within the line and scope of his employment. Ostrander on Insurance, § 57; 128 Ala. 477, 30 South. 665; 63 Minn. 305, 65 N. W. 635; 30 L. R. A. 346, 56 Am. St. Rep. 481; 98 S. E. 100; 204 Ala. 533, 86 South. 383, 11 A. L. R. 1014; 187 Ala. 458, 65 South. 402; 3 Ala. App. 296, 57 South. 82; 169 Ala. 50, 53 South. 794, and authorities supra. The judgment was excessive and ought to be reduced. 48 Ala. 15; 195 Ala. 408, 70 South. 730.

Black, Altman & Harris and K. C. Charlton, all of Birmingham, for appellee.

For every malicious wrong there is a remedy. 201 Ala. 348, 78 South. 204. A calling or profession is a man's property and right. 156 Ala. 382, 47 South. 332, 22 L. R. A. (N. S.) 1224; 189 Ala. 66, 66 South. 657; section 6856, Code 1907; 163 Ala. 348, 50 South. 1008; 177 Mass. 485, 59 N. E. 125, 52 L. R. A. 115, 83 Am. St. Rep. 289; 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496; 181 Ill. 177, 54 N. E. 924; 207 Ill. 226, 69 N. E. 926; 239 U. S. 32, 36 Sup. Ct. 12, 60 L. Ed. 129; 158 Wis. 56, 147 N. W. 32, Ann. Cas. 1916E, 603. The master is liable for injuries inflicted upon others by its agent resulting from actions done in furtherance of the duties intrusted to such agent by the master, whether done in the manner prescribed or not. 187 Ala. 458, 65 South. 402; 3 Ala. App. 296, 57 South. 82; 169 Ala. 50, 53 South. 794; 166 Ala. 345, 51 South. 947. The cause of the discharge being disputed, statements of the master showing his reasons for such discharge made contemporaneously therewith were admissible to show motive. 149 N. Y. 154, 43 N. E. 414; 118 Wis. 258, 95 N. W. 124; 151 Mass. 359, 24 N. E. 208, 5 L. R. A. 724, 48 Mich. 322, 12 N. W. 177; Wigmore on Evidence, § 1729. The declarations of Smith were of the res gestæ. 16 Cyc. 1241; Wigmore, § 1745; 20 Ala. 530; 63 Ala. 82; 6 Ala. App. 600, 60 South. 499; 56 Ala. 336; 167 Ala. 615, 52 South. 530; 189 Ala. 346, 66 South. 499; 244 Pa. 559, 91 Atl. 224, L. R. A. 1915D, 785, Ann. Cas. 1915C,

-421; 82 Ohio St. 174, 92 N. E. 80. It was also admissible in contradiction of the witnesses' testimony. 1 Ala. 65; 196 Ala. 355, 71 South. 659. If error was committed, it was cured by the withdrawal, with instructions to ignore it. 24 Ala. 241; 93 Ala. 45, 9 South. 303; 179 Ala. 505, 60 South. 298; 135 Ala. 168, 33 South. 268. The judgment was not excessive. 7 Ala. App. 530, 61 South. 468; 131 Ala. 439, 31 South. 77; 59 Me. 202; (Tex. Civ. App.) 202 S. W. 135.

GARDNER, J. Appellee, John Millonas, recovered a judgment for $25,000 against appellant United States Fidelity & Guaranty Company, in an action on the case for willfully, maliciously, and wrongfully procuring the discharge of appellee from his employment by the firm of A. Diniaco & Bro., and from this judgment the defendant prosecutes this appeal.

In July, 1918, the plaintiff was working as a sheeter for Diniaco & Bro. in the Birmingham district, earning $11 per day. Diniaco & Bro. did construction work in various parts of the country, and plaintiff was sent to this particular territory from the head office at Pittsburg on the 31st day of July. Plaintiff, while at work as a sheeter, suffered an injury to his eye, causing an absence from his work of about 30 days, after which time he resumed his labors and continued in the employ of Diniaco & Bro. The latter held an insurance policy with defendant company, by which they were indemnified from loss sustained by reason of an injury to any of their employés in that territory, while such employés were engaged in the performance of their duties. One Smith was the claim adjuster for the casualty company in Alabama, with headquarters at Birmingham. He handles all claims of defendant in this state, and plaintiff applied to him for compensation for his injury, but without result. Smith examined some of the witnesses to the accident, and also had several conversations with E. Diniaco, the member of the firm who had charge of the work in Alabama. Plaintiff consulted an attorney, who, it appears, advised him against a recovery. During this time he continued working for Diniaco & Bro. He then consulted another attorney, one Charlton, and employed him to recover for the injuries.

Some time during the latter part of January or the 1st of February, Smith and one Bartlett, who was another adjuster of the company, with headquarters in Atlanta, Ga., went to Charlton's office to talk over the merits of plaintiff's claim. Charlton's attention was called to the fact that the plaintiff had previously employed an attorney who had abandoned the case, and that if Charlton would go into a discussion of its merits, he thought he "could convince him [Charlton] that he would not have any case." Charlton, however, was of the opinion that the case had more merit than the other attorney seemed to think, and appeared to pay little attention to the facts disclosed by Smith. Smith's testimony shows that he in company with Bartlett went to see Charlton for the purpose of adjusting this claim, and while he himself made no offer during the conversation, Bartlett made a nominal offer of $50—not admitting any liability—which offer was declined. Charlton testified that Smith, to the best of his recollection, made the offer; but this conflict is not considered as of serious moment. In the course of this conversation Charlton mentioned the fact that plaintiff was still in the employ of Diniaco. Charlton stated that at this information Smith expressed surprise, and in substance told him that he could not work for Diniaco and sue the insurance company at the same time, and that he would be discharged.

On the day following the conversation between Smith and Charlton, the plaintiff came to Charlton's office and informed him that on the previous day he had been discharged. The plaintiff, testifying in his own behalf, stated: That he was discharged by Diniaco, and that at the time he was discharged Diniaco gave as his reason therefor that—

"The insurance company would not allow him to give me a job any more because I had a suit against the company."

The work in which the plaintiff was engaged required a specially trained man, and there were only a few jobs of that character in the Birmingham district; but the evidence for the plaintiff tends to show that, while this is true, yet work of this kind is difficult to secure. That after remaining in Birmingham for two weeks endeavoring to secure employment, and failing, he went to Chicago, but without result, and the first work he obtained—which was about two months after leaving Birmingham—was with Diniaco & Bro. at Steubenville, Ohio, working there for about two months, and also worked some for them in Pittsburg. Diniaco denied that he discharged the plaintiff, but insists that he quit of his own accord, testifying that he was badly in need of plaintiff's services, as it was difficult to get a man to do that character of work, and he told Smith that he needed a sheeter badly.

Diniaco denied that he had any conversation with any one to the effect that the insurance company required him to discharge the plaintiff, and he particularly denied a conversation with one Mike Gigis at his place of business to such effect. He admitted that he "told John to go up and settle his case, and he could keep him," but insisted he did not undertake to induce him to settle, merely asking him to, so that he

would continue his work, as it appeared he would not do proper work until the matter was settled.

The defendant offered other evidence tending to show the work which the plaintiff was doing at the time was not satisfactory. Smith, testifying in behalf of defendant, stated that Diniaco complained to him that Millonas would not work, and if he did not work "he would have to get off the job," and that in reply to the statement that he was going to let him go, Smith said:

"I told him that we had nothing to do with that; that he could do as he thought best. I might have said, as my opinion, perhaps, it would be a good idea; but I gave him to understand that he could do as he pleased. That occurred about a month or six weeks after John got hurt."

Smith denied that he had anything to do with plaintiff's discharge, and that the subject was never discussed. That such was not the policy of his company, and had never been, and that he had never stated to an employer insured by the company that it was the policy of the company if an employé put his claim in the hands of a lawyer for suit that he (the employer) must discharge him. He admitted that in the conversation with Charlton he had made the statement that he would have "your $11 a day man discharged, or something to that effect," but insists that this was said jocularly, and with no seriousness intended.

Smith was also asked in regard to statements made at the First National Bank Building in the presence of two or three attorneys, to the effect that he would have the plaintiff discharged, and that it was the policy of the company to have the employer who had insurance with it to discharge the employé who placed his claim in the hands of an attorney. He admitted the statements in part, but not in toto.

The insurance policy contained, among other provisions, the following:

"The company reserves the right to settle any claim or suit. Whenever requested by the company the assured shall aid in securing information, evidence, and the attendance of witnesses; in effecting settlement; and in prosecuting appeal. The assured shall at all times render to the company, except in a pecuniary way, all co-operation and assistance within his power"

—and under the head Cancellation:

"Without prejudice to the rights of the assured, as respects anything that has occurred during the time the policy has been in force, the company may cancel this policy at any time by a written notice served on the assured, or sent by registered mail to the assured at the address given herein, stating when the cancellation shall be effective. The assured may cancel this policy by like notice to the company."

[1] Appellant insists that conceding everything alleged in the complaint, and proven in the cause, the plaintiff has no cause of action by reason of the cancellation clause in the policy, above set out, upon the theory that the defendant company has an absolute right to cancel the policy, and from a threat to do what it has a legal right to do no cause of action can arise to a third person.

The case directly in point, where the question is fully treated, is that of London Guarantee, etc., Co. v. Horn, 206 Ill. 493, 69 N. E. 526, 99 Am. St. Rep. 185. In the Horn Case, Arnold, Schwinn & Co. were the employers of Horn, plaintiff, just as the relation existed in the instant case between Diniaco and Millonas; and there the employer carried a policy of liability insurance with the London Guarantee & Accident Company, occupying the same position as does the United States Fidelity & Guaranty Company here. The insurance company was there the appellant, and, speaking to this question, the Supreme Court of Illinois said:

"But certainly a desire to compel the employé to surrender a cause of action wholly disconnected with the continuance of his employment does not afford justification for interference by a third party, who desires the satisfaction of the alleged liability. * * *

"Arnold, Schwinn & Co. had the undoubted right to discharge Horn whenever it desired. It could discharge him for reasons the most whimsical or malicious, or for no reason at all, and no cause of action in his favor would be thereby created; but it by no means follows that, while the relations between Arnold, Schwinn & Co. and Horn were pleasant, and while, as the evidence shows, it was the expectation of the company that Horn would continue in its employ 'all the year around,' the interference of appellant, whereby it secured the employer to exercise a right which was given it by the law, but which, except for the action of appellant, it would not have exercised, is not actionable."

The opinion concludes with the following language:

"We therefore conclude, both upon reason and authority, that where a third party induces an employer to discharge his employé who is working under a contract terminable at will, but under which the employment would have continued indefinitely, in accordance with the desire of the employer, except for such interference, and where the only motive moving the third party is a desire to injure the employé and to benefit himself at the expense of the employé by compelling the latter to surrender an alleged cause of action, for the satisfaction of which, in whole or in part, such third party is liable, and where such right of action does not depend upon and is not connected with the continuance of such employment, a cause of action arises in favor of the employé against the third party."

This authority, as well as others hereinafter cited, hold that the mere fact the employment was not for any fixed period, but merely at the will of the parties, has no effect upon the right of action, for, as stated by the Supreme Court of the United States in Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283:

"The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others."

The Horn Case was cited and followed by the Illinois Court in Gibson v. Fid. & Cas. Co., 232 Ill. 49, 83 N. E. 539, and is sustained by the decided weight of authority. See Johnson v. Ætna Life Ins. Co., 158 Wis. 56, 147 N. W. 32, Ann. Cas. 1916E, 603; Huskie v. Griffin, 75 N. H. 345, 74 Atl. 595, 27 L. R. A. (N. S.) 966, 139 Am. St. Rep. 718; Chipley v. Atkinson, 23 Fla. 206, 1 South. 934, 11 Am. St. Rep. 367; Doremus v. Hennessy, 176 Ill. 608, 52 N. E. 924, 54 N. E. 524, 43 L. R. A. 797, 802, 68 Am. St. Rep. 203; Walker v. Cronin, 107 Mass. 555; Moran v. Dunphy, 177 Mass. 485, 59 N. E. 125, 52 L. R. A. 115, 83 Am. St. Rep. 289.

In Sparks v. McCreary, 156 Ala. 382, 47 South. 332, 22 L. R. A. (N. S.) 1224, this court recognized that—

A man's "calling, when chosen, is" his "property and right," and "an unlawful invasion of or interference with the pursuit or progress of one's trade, profession, or business is a wrong for which an action lies."

The case of Raycroft v. Tayntor, 68 Vt. 219, 35 Atl. 53, 33 L. R. A. 225, 54 Am. St. Rep. 882, upon analysis, will be found not out of harmony with the conclusion here reached, for there the discharge of the plaintiff was but the result of the exercise on the part of the defendant of a legal right. Such, also, was the effect of the holding of this court in Tenn. Coal & Iron Co. v. Kelly, 163 Ala. 348, 50 South. 1008. Indeed, the Kelly Case cited with approval the Horn Case, supra, as well as the Raycroft Case. In the Kelly Case it was said, after citing these authorities:

"It follows * * * that if the defendant wrongfully and maliciously procured the discharge of the plaintiff, it is liable to him for the damages proximately resulting from that discharge, though Waggoner & Hannon were not liable for discharging him, and had a right to discharge him at any time, with or without cause."

The opinion then proceeds to state that if the discharge of the plaintiff was merely as a consequence of the termination of the contract between Waggoner & Hannon, then the plaintiff could not recover, continuing as follows:

"In other words, if defendant had a right to terminate its contract with Waggoner & Han-

non at will, or for the cause assigned, and it did so terminate it, resulting in the discharge and injury of plaintiff, the defendant is not liable to plaintiff, no matter what motive impelled the act, provided the act itself was rightful."

In the instant case, the right of the defendant to cancel the contract of insurance with plaintiff's employer was of course not questioned, and if his discharge had been but the result or consequence of such an exercise of a lawful right, no cause of action would be shown. Such, however, was not the case, as the evidence for the plaintiff tends to show that his discharge was procured maliciously and wrongfully by a threat of cancellation, for the purpose of forcing a settlement of his claim favorable to the company and disadvantageous to himself. Plaintiff complains therefore, not of the consequence of the exercise of a lawful right, but of the unlawful use of that lawful right by the defendant.

In discussing the Horn Case, supra, we have not overlooked the insistence on the part of counsel for appellant that the Illinois court in the subsequent case of Kemp v. Div. No. 241, 255 Ill. 213, 99 N. E. 389, Ann. Cas. 1913D, 347, explained the holding in the Horn Case as resting upon a theory different from that here understood and treated. However, what was said in the Kemp Case by way of explanation of the Horn Case was in an opinion not concurred in by the majority, as was pointed out by the separate opinion of the Chief Justice and two Associates, which follows the special concurring opinion of Justice Carter. The Horn Case was not directly involved in the decision on that appeal, and we do not think that it can be said to have been shaken by this later decision. The Kemp Case was decided in 1912, and the Horn Case as late as 1915 was cited with approval by the Supreme Court of the United States as holding to this view in Truax v. Raich, supra. We think it entirely sound, and are content to follow in its wake. The assignments of error resting upon this insistence are therefore without merit.

[2] It is further insisted that the affirmative charge was due the defendant for the reason that, conceding that the discharge of the plaintiff was procured by Smith, yet there is no evidence upon which the jury could find that in so doing Smith was acting within the line and scope of his authority as defendant's agent; and much stress is laid upon the fact that upon the undisputed proof by the defendant's vice president and another officer Smith had no authority to threaten to interfere with the contract of employment existing between the insured and his employer, and that such was not and had never been the policy of the company. This is not the test. Smith had been insurance adjuster for the defendant, in full charge of that department, since 1917, handling the

settlements of all personal injury claims arising in this state. His immediate superior was one Walker, who was vice president of the company, and had direct charge of this particular department in the United States and Canada. Smith's duties required him to investigate accidents, occurring in the state, in which the company is interested. He makes reports, seeks settlements, and in fact makes settlements and adjustments of claims, tries many of the cases for defendant, and, in fact, has complete control of the claim adjustment department of defendant's business in Alabama. It may be inferred from his testimony that in the discharge of his duties he frequently interviews the attorney of those who have claims or suits against the company's insured, discusses with them the merits or demerits of their case, and seeks to reach an adjustment thereof. He was the only agent of defendant in Alabama charged with these duties, and, certainly, he had the authority to take advantage of that clause in the insurance policy whereby the insured agrees to render aid in securing information and evidence as to the injury, and in effecting settlements, and, indeed, all co-operation and assistance within the power of assured, with the exception of that in a pecuniary way. Smith was employed by the defendant upon a salary basis; the number of claims adjusted and the settlements made, whether large or small, in no manner affected his compensation. Certainly it could be inferred that the defendant company would expect settlements as advantageous to it as could reasonably and properly be secured.

The evidence for the plaintiff tended to show that Smith was anxious to settle this claim, but wished to do so for a nominal sum if possible, and if this settlement could have been made for $50 the company would have received the benefit thereof. Certainly, when Smith went to talk over the matter with Charlton and sought an adjustment of this claim, he was acting within the line and scope of his employment. Failing therein, we think it equally clear that if he attempted to bring about the same result by procuring the plaintiff's discharge from the employment of Diniaco, he was also acting within the line and scope of his employment. As said by this court in Edwards v. Earnest, ante, p. 1, 89 South. 729, present term:

"The general rule applicable is well understood, and the difficulty arises upon its application to varying circumstances. The terms "course of employment" and "scope of authority" are not susceptible of accurate definition. What acts are within the scope of employment can be determined by no fixed rule; the authority from the master generally being gatherable from the surrounding circumstances.' "

The question was also very recently considered in Birmingham Macaroni Co. v. Tadrick, 205 Ala. 540, 88 South. 858, present term,

wherein are cited the cases of Gassenheimer v. West. Ry. of Ala., 175 Ala. 319, 57 South. 718, 40 L. R. A. (N. S.) 998; Case v. Hulsebush, 122 Ala. 212, 26 South. 155; Jebeles-Colias Conf. Co. v. Booze, 181 Ala. 456, 62 South. 12; Hardeman v. Williams, 169 Ala. 50, 53 South. 794. In this latter case, speaking to this question, the court said:

"The principal is responsible for the acts of his agent done" within the line and scope of his duties, "though the agent seek to accomplish the master's business by improper or unlawful means, or in a way not authorized by the master, unknown to him, or even contrary to his express direction."

We do not deem it necessary to enter into a more extended discussion of this phase of the case. We are convinced, upon the authority of the case above cited, that there was no error in the refusal of the affirmative charge upon this theory.

[3] It is also argued that the affirmative charge should have been given for the reason that the evidence was not sufficient for submission to the jury that Smith in fact procured the discharge of the plaintiff in the manner set out in the complaint. We have previously called attention to some of the salient features of the testimony, and a detailed discussion thereof would serve no useful purpose. That it was sufficient for the jury to find that Smith did in fact procure the discharge of the plaintiff we think there can be no serious doubt. His testimony tends to show that Smith, not jocularly but seriously, threatened his [Millonas] discharge to his attorney, Charlton, and that within a short time thereafter the plaintiff was in fact discharged. Diniaco himself admits that he told the plaintiff to go up and settle his case, and he could keep him; and Smith states that in a conversation with Diniaco he might have said, as his opinion, in reply to his statement that he was going to let Millonas go, that "perhaps, it would be a good idea." Testimony was offered as to contradictory statements made by defendant's witnesses. We will not further pursue a discussion of the testimony. We are persuaded the evidence was sufficient for the jury to find that Smith procured the plaintiff's discharge, and in the manner substantially set forth in the complaint.

[4] It is further urged that the statement made by Smith in the conversation with Charlton was inadmissible, as a mere declaration of an agent, not binding upon the principal; but, as we have heretofore stated, Smith at this time was acting within the line and scope of his employment in seeking an adjustment of this claim with plaintiff's counsel, and as said in Meador v. Standard Oil Co., 196 Ala. 365, 72 South. 34:

"The admissions or declarations of an agent, when made at the time of doing an act in the execution of his authority, are binding on the principal."

[5] It is also most strenuously insisted that the testimony of plaintiff as to what Diniaco said to him at the time of his discharge, giving as a reason therefor that the insurance company would not permit him to longer remain in his employ, was inadmissible because it was a mere declaration of a third party made out of the presence of the defendant, and in no way binding on it. We are of the opinion, however, that this evidence was admissible as the declaration of a present existing reason for the action on the part of Diniaco in discharging the plaintiff, and comes within the rule laid down in subdivision 2, § 1729, vol. 3, Wigmore on Evidence. It was incumbent upon the plaintiff to show that defendant in fact procured his discharge. The reason for his discharge therefore was a pertinent issue in the case, and any declaration made by the employer at the time of the discharge, to the plaintiff, showing his reason therefor, to the effect that the defendant company required it, was admissible as a part of the res gestæ. The authorities cited in the note to the foregoing section fully sustain the text. See, also, Birmingham Macaroni Co. v. Tadrick, supra; Steketee v. Kimm, 48 Mich. 322, 12 N. W. 177; Elmer v. Tessenden, 151 Mass. 359, 24 N. E. 208, 5 L. R. A. 724; Cooper v. State, 63 Ala. 80; Hooper v. Edwards, 20 Ala. 528.

[6] Diniaco denied that he had discharged the plaintiff, or that Smith had instructed him to do so, or he had so stated in substance to Mike Gigis. There was no error in admitting the testimony of Gigis, as to statements made by Diniaco to him on the day plaintiff was discharged, to this effect.

[7] The plaintiff introduced one Davis, an attorney at Birmingham, who was permitted to testify over defendant's objection that he heard Smith state at the First National Bank Building in Birmingham that he had Millonas "fired," and no witnesses need be summoned to prove that fact. This conversation occurred long after the alleged discharge of Millonas, and while the right of recovery in this case was being discussed among two or three lawyers gathered there at the time. As a mere declaration of an agent concerning past transactions it would not be binding upon the principal, and would be inadmissible. Plaintiff insists that even at that stage of the case it was admissible as contradictory of certain answers to interrogatories sworn to by said Smith, and offered in evidence by the plaintiff, wherein Smith had in substance denied that he had procured the discharge of Millonas, or made any statements to that effect. But whether admissible under the circumstances on this account need not be determined, as the court on the following day ruled that the evidence was inadmissible, and excluded the same. Appellant's counsel contend, however, that the admission of this testimony was harmful, and the effect thereof could not be eradicated from the minds of the jury by the mere exclusion and instructions by the court. But this testimony was subsequently admitted, and we think properly so, for the following reasons: Smith, testifying for the defendant, was on cross-examination by plaintiff asked as to whether or not he had made said statements to Davis in the presence of these other attorneys in the First National Bank Building, some of the questions being put in varying form, and to some of which he replied he could not answer "yes" or "no"; in one instance stating, "I did not state it as you have it there," and in another instance, "Nothing was said about John Millonas in that discussion." Smith also insisted that he was not serious in what he said during that conversation, and that Diniaco's Case was not under discussion.

A careful reading of his testimony will disclose that he admitted in part, and denied in part, and while the jury may have inferred an admission in a general way of the substance of the conversation, yet we are of the opinion, under the circumstances here disclosed, it was permissible for the plaintiff to introduce Davis in rebuttal to testify to the statements made by Smith as set forth in the questions propounded to him on cross-examination. 2 Wigmore on Ev. § 1037; Lewis v. Post, 1 Ala. 69. The report of the case of Raines v. State, 40 South. 932[1], does not disclose the nature of the question and answer thereto, treated by the court in that case; but the statement found in the opinion itself indicates that the situation as here presented was not there under consideration. Doubtless it was but a plain, simple admission of a statement made without equivocation, wherein the offer of contradictory statements would be a matter left largely to the discretion of the trial court.

This evidence being properly admitted, we are of the opinion that defendant can take nothing by the exception to that portion of the argument of plaintiff's counsel that Smith had made such statements.

Assignments of error 76 and 77 appear to be based upon a misconception of what was said by the court in the oral charge.

[8] Nor do we think there was any error in the court instructing the jury that the plaintiff was entitled to recover under the circumstances of this case for mental anguish. Lopes v. Connolly, 210 Mass. 487, 97 N. E. 80, 38 L. R. A. (N. S.) 986; Doucette v. Sallinger, 228 Mass. 444, 117 N. E. 897.

[9] The defendant asked several written charges, the language of which was evidently taken from Tenn. C. & I. Co. v. Kelly, supra, the giving of which would have required the jury to have decided questions of law, and the trial court will not be put in error for their refusal.

---

[1] Reported in full in the Southern Reporter; reported as a memorandum decision without opinion in 147 Ala. 691.

[10, 11] Plaintiff, as previously shown, offered testimony to the effect that Smith, while acting in the line and scope of his employment, had made efforts to settle the case with plaintiff's attorney, Charlton, for the sum of $50, and he was subsequently permitted by the court to prove by himself, as a witness in his own behalf, that he could not see as well out of the injured eye as he could before. It is insisted this was error. It was the theory of plaintiff that Smith was trying to force a bargain, as it were, in the adjustment of his claim, and this evidence had a tendency to show that the injury received was of a permanent character, and that the offer of $50 was but a mere nominal sum, and as indicating the motive of Smith and illustrating his extreme activity in the adjustment of the claim. We do not think reversible error is shown in this ruling.

The last question to consider relates to the excessiveness of the verdict. The utmost pecuniary loss insisted upon by counsel for plaintiff is $2,250. Within something like two months from his discharge, he obtained employment with Diniaco & Bro., with whom he had been working at Birmingham as well as Pittsburg prior to being sent to the Birmingham district by them; and we are of the opinion that such loss, under the evidence in the case, in no event exceeds $1,000. Punitive damages were recoverable under the evidence, for, if the plaintiff is to be believed, his rights were maliciously and wrongfully interfered with. The amount of exemplary damages to be awarded is a matter resting largely in the discretion of the jury, but, as has been previously stated by this court, this is not an unbridled discretion, and if it appears to the judicial mind that passion rather than reason has produced the result, the verdict will be declared excessive and reduced accordingly. One has only to read the record to see that the case presents a most favorable opportunity for a strong and passionate appeal to the jury in behalf of the preservation of human rights and the condemnation of anything bordering upon oppression. Indeed, counsel for appellant demonstrated, upon the submission of this cause in oral argument, his ability to eloquently present the cause in the most forcible manner.

[12] The defendant is held liable and suffers the penalty because of the conduct of the agent acting within the line and scope of his employment; but the proof without dispute discloses that this was the first complaint of this character made against the defendant, and that such had not been its policy, and that its officers had no knowledge thereof. They neither authorized their agent to make settlements in that manner, nor do we think it is shown they have ratified the same. The liability rests solely on the doctrine of respondeat superior. The amount of the verdict—$25,000—is not only greatly disproportionate to the actual damages suffered, but under the circumstances we are of the opinion that neither justice nor the public welfare call for the infliction of so heavy a penalty.

We are of the opinion that passion and not reason dictated the amount of the verdict, and that the objection of excessiveness is well taken. Cotton v. Cooper (Tex. Com. App.) 209 S. W. 135.

Under the provisions of Act of 1915, p. 610, this being the sole ground of reversal, it becomes the duty of this court to designate what in the opinion of the court would be a just and proper amount of recovery, that appellee may be notified thereof, and opportunity afforded to accept or reject the same as provided by said act.

[13] After a careful review of this record upon consultation by the whole court, the conclusion has been reached that the sum of $6,000 would not be excessive under all the circumstances. To this sum, if accepted, interest is to be calculated at legal rate from date of rendition of judgment in the court below, but without the 10 per cent. penalty, as held in the recent case of M. L. & W. P. Co. v. Thombs, 204 Ala. 678, 87 South. 205.

The judgment will accordingly be reversed and the cause remanded, unless the plaintiff within 30 days from this date remits all damages in excess of $6,000, but, upon such remittitur being made and entered, the judgment as then reduced will be affirmed.

Reversed conditionally.

All the Justices concur.

Plaintiff having filed remittitur in writing, the judgment is affirmed.