TYSON, Judge.
Huey Wayne Broadus was indicted for the unlawful possession of a controlled substance in violation of § 20-2-70, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment”. The appellant was sentenced to five years’ imprisonment in the penitentiary. The facts of this case will be briefly stated.
On February 12, 1985, Officers Samuel Cochran, Terry Hicks and James Loftin of the Mobile Police Department went to the appellant’s trailer to execute a search warrant. When they arrived, the officers knocked on the door and this appellant opened the door.
The officers frisked the appellant and found a brown vial in his pocket. The vial contained three tablets, which were later determined to be Dilaudid, which contains the controlled substance hydromorphone hydrochloride. The officers also found numerous other pill bottles, vials, and syringes in the trailer as well as a book labeled “Pill Book”.
I
The appellant contends the trial judge erred by excluding testimony concerning a conversation between the appellant and a Mr. Fowler. Mr. Fowler died prior to trial and at trial defense counsel attempted to introduce evidence of the conversation be *787 tween the appellant and Mr. Fowler, through the testimony of Mr. Fowler’s son, David Fowler.
During the course of David Fowler’s testimony, the following occurred:
“Q. Let me direct your attention back to early 1985. What was your father’s physical condition at that time?
“MR. JORDAN: Judge, I’m going to object to this.
“MR. CLARK: Judge, I can show the relevance. His father was taking Dilau-did at the time, Your Honor.
“MR. JORDAN: Judge, I’m going to object to this as being irrelevant.
“THE COURT: Sustain.
“MR. CLARK: Judge, I don’t want to be argumentative. Could we have a sidebar?
“THE COURT: Yes.
“(Bench conference)
“MR. CLARK: Judge, what I hope to show by this witness is that his father was taking Dilaudid at the time. Huey went into the store and had a conversation about some pains that Huey had, and his father said, here, take some of these, didn’t tell him what it was. He didn’t know what they were and he simply had three pills with him. That’s what I’m going to show that this fellow’s daddy was taking Dilaudid.
“MR. JORDAN: It’s all hearsay.
“MR. CLARK: It’s not with regard to the transaction where he actually gave it to him because that’s—
“THE COURT: It’s hearsay. I’ll let you show that they had — that his father had the drugs, but I’m not going to let you go into the conversation.
“MR. CLARK: I don’t want to be argumentative, but it is a verbal transaction. In other words, when he gave him the reason he gave them — what he said at the time he gave them. I’m not going into what Huey said, just what his daddy said. Of course his daddy is deceased and that’s—
“THE COURT: We’re not going into a conversation involving the decedent because of the Dead Man Statute.
“MR. CLARK: Okay. What I’m saying is, just the—
“THE COURT: This wouldn’t apply in a criminal case. I’ll let you go into the fact they had Dilaudid and they were partners together.
“MR. CLARK: They weren’t partners together. He was just up there.
“THE COURT: Whatever you want to show in that nature, but I’m going to sustain the objection as to the conversation and will note your exception.
“MR. CLARK: Okay. I just want to get it clear so I don’t step over. I can’t go into the conversation he had when he gave him the pills?
“THE COURT: Yes, sir.
“MR. CLARK: With that—
“THE COURT: So far I have let you show his father had them. I will let you show that he had the Dilaudid.
“MR. CLARK: But not the transaction where he gave him the pills?
“THE COURT: Yes, sir.
“MR. CLARK: Well, we would except to that ruling, and I don’t think I have any other questions. Yes, I do.” (R. 114-16)
The appellant asserts that David Fowler should have been allowed to testify about the conversation between the appellant and the elder Mr. Fowler which accompanied Mr. Fowler’s giving three Dilaudid pills to this appellant. He contends this evidence should have been allowed as an exception to the hearsay rule under the Verbal Act Doctrine. This doctrine has been defined as “a doctrine which admits statements that are offered to give meaning to an otherwise ambiguous act.” C. Gamble, McElroy’s Alabama Evidence, § 274.01 (3rd ed. 1977).
The Verbal Act Doctrine is further explained in 6 Wigmore, Evidence, § 1772 (Chadbourn rev. 1976):
“A second kind of situation in which utterances are not offered testimonially arises when the utterance accompanies conduct to which it is desired to attach some legal effect. The conduct or act has intrinsically no definite significance, or only an ambiguous one, and its whole legal purport or tenor is to be more pre *788 cisely ascertained by considering the words accompanying it. The utterance thus enters merely as a verbal part of the act or, in the common phrase, a ‘verbal act’.” (footnotes omitted).
There are very few cases in Alabama which mention or define the Verbal Act Doctrine. Probably the best definition and explanation of this doctrine is found in Colvin v. State, 260 Ala. 338, 70 So.2d 654 (1954). In Colvin, the Alabama Supreme Court stated:
“ ‘Under the res gestae or Verbal Act Doctrine, it is allowable to ascertain the complete significance of a person’s conduct by listening to what he said when doing the act.’ Wigmore on Evidence, Vol. 7 § 2114. As pointed out by Wig-more, under the Verbal Act Doctrine the act as a whole consists of a conduct-part and a verbal-part and the verbal-part may be put in as completing the conduct-part. Alabama cases uphold the doctrine to which we refer. In Cooper v. State, 63 Ala. 80, it was said: ‘ * * * In the complexity of human affairs, what is done, and what is said, are often so re-related, that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud or falsehood, as to both; but there is no ground of objection to one, that does not exist equally as to the other. To reject the verbal fact, would, not unfrequently have the same effect as to strike out the controlling member of a sentence, or the controlling sentence from the context. * * *.’ United States Fidelity and Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A.L.R. 520; Campbell v. State, 133 Ala. 81, 31 So. 802. The utterance sought to be proved serves to give character to conduct not complete and definite in itself. Alabama City C. & A.R. Co. v. Heald, 178 Ala. 636, 59 So. 61.”
Colvin, 260 Ala. at 340, 70 So.2d 654.
The appellant maintains that he was not attempting to introduce the conversation between himself and Mr. Fowler for the truth of the matters asserted in the conversation at issue, but to offer evidence that he had no knowledge of what the pills were or what such contained when he received them from Mr. Fowler.
In Walker v. State, 356 So.2d 672 (Ala.1977), the Alabama Supreme Court held that “knowledge is an essential element of the offense of illegal possession of a controlled substance.” Walker, 356 So.2d at 674.
In that case, the defendant was found in actual possession of a package containing heroin. However, the defendant claimed she did not know the package contained heroin.
In the case at bar, the appellant was found in possession of three Dilaudid tablets. He contends, however, that he did not know what the pills were or that they contained a “controlled substance”.
Since knowledge is an essential element of the offense with which the appellant was charged, he had a right to present evidence concerning his lack of knowledge that the tablets in his possession were Dilaudid and contained a controlled substance. The appellant should have been allowed to present evidence that he received three pills from Mr. Fowler. This evidence alone has no great significance but, when coupled with the conversation which accompanied this act, it takes on legal significance because it tends to show the appellant’s lack of knowledge as to what the pills were because he was not so informed by Mr. Fowler at the time the pills were given to him. Thus, we conclude that David Fowler’s testimony concerning the conversation between his father and this appellant when his father gave the appellant the Dilaudid pills should have been admitted under the Verbal Act Doctrine.
In view of the foregoing, this case is reversed and remanded to the trial court for a new trial.
REVERSED AND REMANDED.
All the Judges concur.